**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., formerly known as DAYS INNS OF AMERICA, INC., a Delaware Corporation, | : |
| Plaintiff, | : Civil Action No. 15- |
| v. | : **COMPLAINT** |
| ANJANI, INC., a Florida corporation; AMRAT M. ANAND, an individual; JITENDRA PATEL, an individual; and NARENDRA BHATT an individual, | : |
| Defendants. | : |

Plaintiff Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc., by its attorneys, LeClairRyan, complaining of defendants Anjani, Inc., Amrat M. Anand, Jitendra Patel and Narendra Bhatt says:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Days Inns Worldwide, Inc., ("DIW"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.      Defendant Anjani, Inc., ("Anjani") on information and belief, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 551 East SR 44, Wildwood, Florida  34785.

3.      Defendant Amrat M. Anand, on information and belief, is a principal of Anjani and a citizen of the State of Florida, residing at 2739 North Florida Avenue, Tampa, Florida 33602.

4.      Defendant Jitendra Patel, on information and belief, is a principal of Anjani and a citizen of the State of Florida, residing at 2739 North Florida Avenue, Tampa, Florida 33602.

5.      Defendant Narendra Bhatt, on information and belief, is a principal of Anjani and a citizen of the State of Florida, residing at 2739 North Florida Avenue, Tampa, Florida 33602.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all the defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.      This Court has personal jurisdiction over Anjani by virtue of, among other things, section 17.5 of the April 20, 1999 license agreement by and between Anjani and DIW (the "License Agreement"), described in more detail below, pursuant to which Anjani has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

8.     This Court has personal jurisdiction over Amrat M. Anand, Jitendra Patel and Narendra Bhatt by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which Amrat M. Anand, Jitendra Patel and Narendra Bhatt acknowledged that they were personally bound by section 17.5 of the License Agreement.

9.     Venue is proper in this District pursuant to section 17.5 of the License Agreement, inasmuch as that provision contains an express waiver by Anjani of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

10.     On or about April 20, 1999, DIW entered into the License Agreement with Anjani for the operation of a 130-room Days Inn® guest lodging facility located at 551 East SR 44 Wildwood, Florida 34785, designated as Days Inn® Site No. 02554-87760-03 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

11.     Pursuant to section 5 of the License Agreement, Anjani was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term.

12.     Pursuant to section 7, section 18.1 and Schedule C of the License Agreement, Anjani was required to make certain periodic payments to DIW for royalties, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

13.     Pursuant to section 7.3 of the License Agreement, Anjani agreed that interest is payable on any past due amount "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

14.     Pursuant to section 3.9 of the License Agreement, Anjani was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Anjani at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

15.     Pursuant to section 3.9 of the License Agreement, Anjani agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, Anjani agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

16.     Pursuant to section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to Anjani for various reasons including Anjani's (a) failure to pay any amount due DIW under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

17.     Pursuant to section 12.1 of the License Agreement, Anjani agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the License Agreement.

18.     Section 12.1 specifically set liquidated damages for the Facility at not less than $2,000.00 for each guest room of the Facility Anjani was authorized to operate at the time of termination.

19.     Pursuant to section 17.5 of the License Agreement, Anjani agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

20.     On or about June 20, 2011, DIW entered into a Connectivity Equipment Lease and Services Addendum (the "Connectivity Addendum") with Anjani.  A true copy of the Connectivity Addendum is attached hereto as <u>Exhibit C</u>.

21.     Pursuant to section 12(c) and Schedule 3 of the Connectivity Addendum, Anjani agreed that, in the event of a termination of the Connectivity Addendum, including by virtue of termination of the License Agreement, it would pay Addendum Early Termination Costs and an early Termination Fee Damages to DIW in accordance with a formula set forth in the Connectivity Addendum.

22.     Effective as of the date of the License Agreement, Amrat M. Anand, Jitendra Patel and Narendra Bhatt provided DIW with a Guaranty of Anjani's obligations under the License Agreement.  A true copy of the Guaranty is attached hereto as <u>Exhibit D</u>.

23.    Pursuant to the terms of the Guaranty, Amrat M. Anand, Jitendra Patel and Narendra Bhatt agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause [Anjani] to perform, each unpaid or unperformed obligation of the [Anjani] under the [License] Agreement."

24.    Pursuant to the terms of the Guaranty, Amrat M. Anand, Jitendra Patel and Narendra Bhatt agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement.

**The Defendants' Defaults and Termination**

25.    Beginning in 2011, Anjani repeatedly breached its obligations under the License Agreement by failing to meet its financial obligations in accordance with the terms of the License Agreement.

26.    By letter dated November 9, 2011, a true copy of which is attached hereto as Exhibit E, DIW advised Anjani that (a) it was in breach of the License Agreement because it owed DIW approximately $117,012.60 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default and (c) if the default was not cured, then the License Agreement might be subject to termination.

27.    By letter dated March 15, 2012, a true copy of which is attached hereto as Exhibit F, DIW advised Anjani that (a) it was in breach of the License Agreement because it owed DIW approximately $142,219.38 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default and (c) if the default was not cured, then the License Agreement might be subject to termination.

28.     By letter dated March 28, 2012, a true copy of which is attached hereto as <u>Exhibit</u> <u>G</u>, DIW terminated the License Agreement effective March 28, 2012 and advised Anjani that it was required to pay DIW as liquidated damages for premature termination the sum of $262,628.60 as required under the License Agreement and Connectivity Addendum, and all outstanding Recurring Fees through the date of termination.

## **FIRST COUNT**

29.     DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 28 of the Complaint.

30.     Pursuant to sections 3.8 and 4.8 of the License Agreement, Anjani agreed to allow DIW to examine, audit, and make copies of Anjani's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

31.     The calculation of the monetary amounts sought by DIW in this action is based on the gross room revenue information supplied to DIW by Anjani and, to the extent there has been non-reporting, DIW's estimate as to the gross room revenue earned by Anjani.

32.     The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Anjani.

**WHEREFORE**, DIW demands judgment ordering that Anjani account to DIW for any and all revenue derived as a result of marketing, promoting or selling guest lodging services at the Facility from the inception through the date of termination of the License Agreement.

**SECOND COUNT**

33.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 32 of the Complaint.

34.     By letter dated March 28, 2012, DIW terminated the License Agreement, effective March 28, 2012, due to Anjani's repeated failure to timely meet its financial obligations to DIW under the License Agreement.

35.     Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, Anjani shall pay liquidated damages to DIW within 30 days of termination.

36.     Section 12(c) and Schedule 3 of the Connectivity Addendum provides that, in the event of a termination of the Connectivity Addendum, including by virtue of termination of the License Agreement, Anjani shall pay Addendum Early Termination Costs and an early Termination Fee to DIW in accordance with a formula set forth in the Connectivity Addendum.

37.     As a result of termination of the License Agreement, Anjani is obligated to pay DIW liquidated damages in the amount of $262,628.60 as calculated pursuant to section 12.1 of the License Agreement and section 12(c) and Schedule 3 of the Connectivity Addendum.

38.     Notwithstanding DIW's demand for payment, Anjani has failed to pay DIW the liquidated damages as required in section 12.1 of the License Agreement and section 12(c) and Schedule 3 of the Connectivity Addendum.

39.     DIW has been damaged by Anjani's failure to pay liquidated damages.

**WHEREFORE**, DIW demands judgment against Anjani for liquidated damages in the amount of $262,628.60 together with interest and costs of suit.

## THIRD COUNT

40.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 39 of the Complaint.

41.     By virtue of the premature termination of the License Agreement, DIW sustained a loss of future revenue over the remainder of the term of the License Agreement.

42.     If the Court determines that Anjani is not liable to pay DIW liquidated damages as required by section 12.1 of the License Agreement and section 12(c) and Schedule 3 of the Connectivity Addendum then, in the alternative, Anjani is liable to DIW for actual damages for the premature termination of the License Agreement.

43.     DIW has been damaged by Anjani's breach of its obligation to operate a Days Inn® guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, DIW demands judgment against Anjani for actual damages in an amount to be determined at trial, together with interest and costs of suit.

## FOURTH COUNT

44.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 43 of the Complaint.

45.     Pursuant to section 7, section 18.1 and Schedule C of the License Agreement, Anjani was obligated to remit Recurring Fees to DIW.

46.     Despite its obligation to do so, Anjani failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $221,413.84.

47.     Anjani's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Anjani for the Recurring Fees due and owing under the License Agreement, in the current amount of $221,413.84, together with interest and costs of suit.

## FIFTH COUNT

48.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 47 of the Complaint.

49.     At the time of the termination of the License Agreement, Anjani was obligated to pay DIW Recurring Fees.

50.     Despite its obligation to do so, Anjani failed to pay certain Recurring Fees due and owing under the License Agreement in the current amount of $221,413.84.

51.     Anjani's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Anjani for the Recurring Fees due and owing under the License Agreement, in the current amount of $221,413.84, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

52.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 51 of the Complaint.

53.     Pursuant to the terms of the Guaranty, Amrat M. Anand, Jitendra Patel and Narendra Bhatt agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Anjani under the License Agreement.

54.     Despite their obligations to do so, Amrat M. Anand, Jitendra Patel and Narendra Bhatt have failed to make any payments or perform or cause Anjani to perform each obligation required under the License Agreement.

55.     Pursuant to the Guaranty, Amrat M. Anand, Jitendra Patel and Narendra Bhatt are liable to DIW for Anjani's liquidated damages in the amount of $262,628.60, or actual damages in an amount to be determined at trial, and Anjani's Recurring Fees due and owing under the License Agreement, in the current amount of $221,413.84.

**WHEREFORE**, DIW demands judgment against Amrat M. Anand, Jitendra Patel and Narendra Bhatt for all liquidated damages, or actual damages, and Recurring Fees due and owing under the License Agreement, together with interest and costs of suit.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.,
f/k/a Days Inns of America, Inc.

By: _____
**BRYAN P. COUCH**

Dated:

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action

pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.,
f/k/a Days Inns of America, Inc.

By: _____
   **BRYAN P. COUCH**

Dated: 5/13/15

# EXHIBIT A

1134098v1

Location: Wildwood, FL
Entity No. 87760
Unit No.: 2554

# DAYS INNS OF AMERICA, INC.
## LICENSE AGREEMENT

THIS LICENSE AGREEMENT ("Agreement"), dated _April 20_, 19_99_, is between **DAYS INNS OF AMERICA, INC.**, a Delaware corporation ("we", "our" or "us"), and **ANJANI, INC.**, a Florida corporation ("you"). The definitions of capitalized terms are found in Appendix A. In consideration of the following mutual promises, the parties agree as follows:

This transaction involves the transfer of an existing Chain Facility at the Location first granted to **SUMTER INN, INC.**, a Florida corporation ("Prior Licensee") in a License Agreement with us dated January 19, 1994 (the "Prior Agreement"). ~~You assume and obligate yourself to perform any and all of the obligations (financial and otherwise) of the Prior Licensee under the Prior Agreement that is not paid or performed as of the date of this Agreement, including without limitation, the obligation to pay any unpaid Royalties, Reservation System User Fees or other amounts due us and to correct any uncured defaults other than as expressly superseded by this Agreement.~~ {Intentionally Stricken}

1. **License.** We have the exclusive right to license and franchise to you the distinctive "Days Inn" System for providing transient guest lodging services. We grant to you and you accept the License, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination. You will call the Facility a "Days Inn." You may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion.

2. **Days Inns Franchisee Advisory Association.** You will be eligible to participate in the Days Inn Franchisee Advisory Association, a Delaware corporation that is the organization of Days Inn System licensees, in accordance with the Bylaws and Certificate of Incorporation of the Association, as amended, so long as you are not in default under this Agreement.

3. **Your Improvement and Operating Obligations.** Your obligations to improve, operate and maintain the Facility are:

3.1 **Improvements.** You must select and acquire the Location and acquire, equip and supply the Facility in accordance with System Standards for entering conversion facilities. You must begin improvement of the Facility no later than thirty (30) days after the Effective Date. The Facility must score 400 points (or equivalent) within ninety (90) days after the Effective Date and 425 points (or equivalent) within nine months after the Effective Date. All improvements will comply with System Standards, any Approved Plans, Schedule B and any Punch List attached to this

DAYEXHC1 2/98

1

Agreement.    Your general contractor or you must carry the insurance required under this Agreement during renovation.  If you do not commence or complete the improvement of the Facility by the dates specified in this Section 3.1, or the Facility does not meet the post-transfer quality assurance inspection standard, or complete the post-transfer improvements specified in the Punch List after the Effective Date, then we may, in our sole discretion, terminate this Agreement by giving written notice to you.  Time is of the essence for the Improvement Obligation.  We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Improvement Obligation. The grant of an extension will not waive any other default existing at the time the extension is granted.

3.2  **Improvement Plans.**  You will create plans and specifications for the work described in Section 3.1 (based upon the System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location.  We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like. Our review does not cover technical, architectural or engineering factors, or compliance with federal, state or local laws, regulations or code requirements. We will not be liable to your lenders, contractors, employees, guests, others, or you on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after renovation or construction.  Any material variation from the Approved Plans requires our prior written approval. You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request. We may inspect the work while in progress without prior notice.

3.3  **Opening.**  You may continue to identify the Facility as part of the System prior to completing the Improvement Obligation.

3.4  **Operation.**  You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with the law and System Standards.  You will keep the Facility in a clean, neat, and sanitary condition.  You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual.  You may add to or discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility, only with our prior written consent which we will not unreasonably withhold or delay.  Your front desk operation, telephone system, parking lot, swimming pool and other guest service facilities may not be shared with or used by guests of another lodging or housing facility.

3.5  **Training.**  You (or a person with executive authority if you are an entity) and the Facility's manager will attend the training programs described in Section 4.1 we designate as mandatory for licensees or managers, respectively.  You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement.  You will pay for all travel, lodging, meals and compensation expenses of the people you send for training programs, the cost of training

DAYEXHC1 2/98

2

materials and other reasonable charges we may impose for training under Section 4.1. You will direct the Facility staff to attend Property Opening Training and reimburse us for our expenses for the training as discussed in Section 4.1.2.

**3.6 Marketing.** You will participate in System marketing programs, including the Directory and the Reservation System. You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System. You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants. You may implement, at your option and expense, your own local advertising. Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication. You will stop using any non-conforming, out-dated or misleading advertising materials if we so request.

3.6.1 You may participate in any regional marketing, training or management alliance or cooperative of Chain licensees formed to serve the Chain Facilities in your area. We may assist the cooperative collect contributions. You may be excluded from cooperative programs and benefits if you don't participate in all cooperative programs according to their terms, including making payments and contributions when due.

**3.7 Governmental Matters.** You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote. You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings.

**3.8 Inspections and Audits.** You will permit our representatives to perform quality assurance inspections of the Facility and audit your financial and operating books and records (including tax returns) particularly those relating to the Facility and any related business, with or without prior notice of the inspection or audit. The inspections and audits will commence during normal business hours, although we may observe Facility operation and accounting activity at any time. You, the Facility staff and your other agents and employees will cooperate with our inspectors and auditors in the performance of their duties. You will pay us any underpayment of, and we will pay you or credit your Recurring Fee account for any overpayment of, Recurring Fees discovered by an audit. If the Facility does not pass an inspection, you refuse to cooperate with our inspectors or our auditors when they arrive for an audit at a time scheduled at least 3 business days in advance or the audit reveals that you paid us less than 97% of the correct amount of Recurring Fees for a fiscal year or longer, you will pay us the Audit Fee described in Section 4.8, or the reasonable costs of travel, lodging and meal expenses for reinspection and any reinspection fee we may impose. We may publish or disclose the results of quality assurance inspections.

**3.9 Reports and Accounting.** You will prepare and submit timely monthly reports containing the information we require about the Facility's performance during the preceding month. You will prepare and submit other reports and information about the Facility as we may reasonably request

DAYEXHC1 2/98

3

from time to time or in the System Standards Manual. You will prepare and maintain any reports required under the System Standards Manual in the Facility's property management or reservation computer system, including the name and address of Facility guests, if collected, and send them to us or allow us to access them by means of a telephone datalink. You will allow us access to the reports and data stored on the Facility's property management or reservation computer system via telephone, provided that we will not unreasonably interfere with normal functioning of the property management or reservation computer system. You will maintain accounting books and records in accordance with generally accepted accounting principles and the American Hotel & Motel Association Uniform System of Accounts for Hotels, as amended, subject to this Agreement and other reasonable accounting standards we may specify from time to time. You will prepare and submit to us if we so request your annual and semi-annual financial statements. We do not require that your financial statements be independently audited, but you will send us a copy of your audited statements if you have them audited and we ask for them.

3.10 **Insurance.** You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual. Unless we instruct you otherwise, your liability insurance policies will name Days Inns of America, Inc. and Cendant Corporation, its successors and assigns as additional insured.

3.11 **Conferences.** You (or your representative with executive authority if you are an entity) will attend each annual Chain conference and pay the Conference Fee we set for the Chain licensees, if and when we determine to hold an annual Chain conference. Mandatory recurrent training for licensees and managers described in Section 4.1.3 may be held at a conference. The Fee will be the same for all Chain Facilities that we license in the United States. You will receive reasonable notice of a Chain conference.

3.12 **Purchasing.** You will purchase or obtain certain items we designate as proprietary or that bear Marks, such as signage, only from suppliers we approve. You may purchase any other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards.

3.13 **Good Will.** You will use reasonable efforts to protect, maintain and promote the name "Days Inn" and its distinguishing characteristics, and the other Marks. You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in conduct which is unlawful or damaging to the good will or public image of the Chain or System. You will participate in Chain-wide guest service and satisfaction guaranty programs we require in good faith for all Chain Facilities. You will follow System Standards for identification of the Facility and for you to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners.

3.14 **Facility Modifications.** You may materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) only after you receive our prior written consent, which we will not unreasonably withhold or delay. You will pay our Rooms Addition Fee then in effect for each guest room you add to the Facility. If we so request, you will obtain our prior written approval of the plans and specifications for any material modification, which we will

DAYEXHCI 2/98

4

not unreasonably withhold or delay.  You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards.

**3.15  Courtesy Lodging.**  You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time (but only to the extent that adequate room vacancies exist) to our representatives traveling on business, but not more than three standard guest rooms at the same time.

**3.16  Minor Renovations.**  Beginning three years after the Opening Date, we may issue a "Minor Renovation Notice" to you that will specify reasonable Facility upgrading and renovation requirements (a "Minor Renovation") to be commenced no sooner than 60 days after the notice is issued, having an aggregate cost for labor, FF&E and materials estimated by us to be not more than the Minor Renovation Ceiling Amount.  You will perform the Minor Renovations as and when the Minor Renovation Notice requires.  We will not issue a Minor Renovation Notice within three years after the date of a prior Minor Renovation Notice, or if the three most recent quality assurance inspection scores of the Facility averaged at least 425 points or equivalent and the most recent quality assurance inspection score for the Facility was at least 400 points or equivalent when the Facility is otherwise eligible for a Minor Renovation.

**4.  Our Operating and Service Obligations.**  We will provide you with the following services and assistance:

**4.1  Training.**  We will offer hospitality management training, property opening, recurrent training and supplemental training.

**4.1.1  Management Training.**  Between 60 days before and 60 days after the projected Opening Date, we will provide (subject to space availability), and you or a person with executive authority if you are an entity and a Facility manager (usually the general manager) must complete, a training program to our satisfaction.  The training program will be held at a location in the United States we designate, will not exceed two weeks in duration, and will cover such topics as System Standards, services available from us, and operating a Chain Facility.  We may charge you a reasonable fee for materials for each manager trainee.  Any replacement general manager of the Facility must complete the training program within the time specified in the System Standards Manual.  No tuition will be charged for your first participation in this training but you must pay for your representative's travel, lodging, meals, incidental expenses, compensation and benefits.  We may charge you reasonable tuition for training for replacement general managers.

**4.1.2  Property Opening Training.**  We will provide at the Facility or another agreed location a "Property Opening Training" program (at our discretion as to length and scheduling) to assist you in opening the Facility.  There is no tuition for the Property Training Program.  However, you will provide our representatives with lodging during the Program and pay us a fee of $150.00 to offset our representatives' travel, meal and other out-of-pocket expenses.

**4.1.3 Recurrent Training.** We will provide training for you and the Facility's manager if we determine that additional training for licensees and managers is necessary from time to time. Training will be held in our U.S. training center or other locations. You will pay for your representative's travel, lodging, meals, incidental expenses, compensation and benefits for this training. This training may be held in conjunction with a Chain conference.

**4.1.4 Supplemental Training.** We may offer optional training programs without charge or for tuition. There is usually a tuition charge for additional training which is provided to you or your staff at your request. We may offer or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices.

**4.1.5 Licensee Orientation Training.** We will conduct, and you (or a person with executive authority if you are an entity) will attend an orientation program to familiarize you with the System, the Chain, and our services in a location we designate in the United States, before or within 30 days after the Opening Date. The program will be no longer than three days. There will be no tuition charged but you will pay for the travel, lodging and meals of the persons who attend the program. If you become the licensee of additional Chain Facilities after you attend the program one time, attendance will be at your option.

4.1.6 We may charge you a reasonable cancellation fee if you cancel your training program commitments or reservations within 30 days (or such shorter period as we may specify) before the start of any training program at which you or your representative has a reservation. We may charge you tuition for your representatives to attend mandatory sessions other than those people we require to attend the training and fees for instructional materials.

**4.2  Reservation System.** We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion. We will use the Basic Reservation Charge for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System. We will provide software maintenance for the software we license to you to connect to the Reservation System if your Recurring Fee payments are up to date. The Facility will participate in the Reservation System, commencing with the Opening Date for the balance of the Term. We have the right to provide reservation services to lodging facilities other than Chain Facilities or to other parties. We will not offer callers to our general consumer toll free reservation telephone number in the United States the opportunity to make reservations for other lodging chains.

**4.3  Marketing.**

4.3.1  We will promote public awareness and usage of Chain Facilities by implementing advertising, promotion, publicity, market research and other marketing programs, training programs and related activities, and the production and distribution of Chain publications and directories of hotels. We will determine in our discretion: (i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature

DAYEXHC1 2/98

and type of advertising copy, other materials and programs. We or an affiliate may be reimbursed for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services. We are not obligated to supplement or advance funds available from System licensees to pay for marketing activities. We do not promise that the Facility or you will benefit directly or proportionately from marketing activities.

4.3.2  We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) and may make available to you (to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs.

4.3.3  We will publish the Chain Directory. We will include the Facility in the Chain Directory after it opens if you submit the information we request on time, and you are not in default under this Agreement at the time we must arrange for publication. We will supply Directories to you for display at locations specified in the System Standards Manual or policy statements. We may assess you a reasonable charge for the direct and indirect expenses (including overhead) of producing and delivering the Directories.

4.4  **Purchasing.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

4.5  **The System.** We will control and establish requirements for all aspects of the System. We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions. We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances.

4.6  **Consultations and Standards Compliance.** We will assist you to understand your obligations under System Standards by telephone, mail, during quality assurance inspections, through the System Standards Manual, at training sessions and during conferences and meetings we conduct. We will provide telephone and mail consultation on Facility operation and marketing through our representatives.

4.7  **System Standards Manual and Other Publications.** We will specify System Standards in the System Standards Manual, policy statements or other publications. We will lend you one copy of the System Standards Manual promptly after we sign this Agreement. We will send you any System Standards Manual revisions and/or supplements as and when issued. We will send you all other publications for Chain licensees and all separate policy statements in effect from time to time.

4.8  **Inspections and Audits.** We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.8. We

have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection. We may impose a reinspection fee and will charge you for our costs as provided in Section 3.8. You will pay us an "Audit Fee" of $300.00 when we invoice you for an Audit Fee under Section 3.8. We may increase the Audit Fee on a Chain-wide basis to cover any increases in our audit costs to not more than $500.00, effective any time after December 31, 2005. Our inspections are solely for the purposes of checking compliance with System Standards.

**5. Term.** The Term begins on the Effective Date and expires on the day prior to the **fifteenth anniversary** of the Opening Date. Some of your duties and obligations will survive termination or expiration of this Agreement. You will execute and deliver to us with this Agreement a notarized Declaration of License Agreement in recordable form. We will countersign and return one copy of the Declaration to you. We may, at our option, record the Declaration in the real property records of the county where the Facility is located. The Declaration will be released at your request and expense when this Agreement terminates or expires and you perform your post-termination obligations. NEITHER PARTY HAS RENEWAL RIGHTS OR OPTIONS.

**6. Initial Fees.**

**6.1 Application and Initial Fees.** We have received from you a non-refundable Application Fee of $1,000.00. You will pay us a portion of a $20,000.00 non-refundable Initial Fee in the amount of $10,000.00, when you sign this Agreement, which is fully earned when we sign this Agreement. The remaining balance of the Initial fee will be placed on a Promissory Note.

**7. Recurring Fees, Taxes and Interest.**

7.1    You will pay us certain "Recurring Fees" in U.S. dollars (or such other currency as we may direct if the Facility is outside the United States) ten days after the month in which they accrue, without billing or demand. Recurring Fees include the following:

7.1.1 A "Royalty" equal to six and five-tenths percent (6.5%) of Gross Room Revenues of the Facility accruing during the calendar month, accrues from the earlier of the Opening Date or the date you identify the Facility as a Chain Facility or operate it under a Mark until the end of the Term.

7.1.2 A "Reservation System User Fee" including a "Basic Reservation Charge" for participation in and availability of the Reservation System as set forth in Schedule C, and the charges and fees referred to in Schedule C or Section 4.2 of this Agreement, accrues from the Opening Date until the end of the Term, including during suspension periods. We reserve the right to increase or modify the Reservation System User Fees for all Chain Facilities, and to add other fees and charges for new services, at our sole discretion as to amount or formula, from time to time, but with at least 30 days prior written notice, by substituting a new Schedule C or otherwise, to reflect changes in the fully allocated costs of providing Reservation System-related services, and to add, drop or modify the types of reservation services we offer. You will also pay or reimburse us for travel and other agent commissions paid for certain reservations at the Facility and a "GDS Fee" levied to pay for

DAYEXHC1 2/98                                                8

reservations for the Facility originated or processed through the Global Distribution System, the Internet and other reservation systems and networks. We may charge a reasonable service fee for this service. We may charge Facilities using the System outside the United States for reservation service using a different formula.

7.2  You will pay to us "Taxes" equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Recurring Fees by the jurisdictions where the Facility is located, but not including any income tax, franchise or other tax for the privilege of doing business by us in your State. You will pay Taxes to us when due.

7.3  "Interest" is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

7.4  If a transfer occurs, your transferee or you will pay us our then current Application Fee and a "Relicense Fee" equal to the Initial Fee we would then charge a new licensee for the Facility.

## 8.  Indemnifications.

8.1  Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

8.2  You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters.

9

8.3  We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses incurred by you in any action or claim arising from your proper use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name.  You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you.  You will cooperate with our defense and resolution of the claim.  We may resolve the matter by obtaining a license of the property for you at our expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others.

## 9.  Your Assignments, Transfers and Conveyances.

9.1  **Transfer of the Facility.**  This Agreement is personal to you (and your owners if you are an entity).  We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you.  You may finance the Facility and grant a lien, security interest or encumbrance on it without notice to us or our consent.  If a Transfer is to occur, the transferee or you must comply with Section 9.3.  Your License is subject to termination when the Transfer occurs.  The License is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility.  The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13.  You and your owners may, only with our prior written consent and after you comply with Sections 9.3 and 9.6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise.  Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers.

9.2  **Public Offerings and Registered Securities.**  You may engage the first registered public offering of your Equity Interests only after you pay us a public offering fee equal to $15,000.  Your Equity Interests (or those of a person, parent, subsidiary, sibling or affiliate entity, directly or indirectly effectively controlling you), are freely transferable without the application of this Section if they are, on the Effective Date, or after the public offering fee is paid, they become, registered under the federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on a national securities exchange or the automated quotation system of the National Association of Securities Dealers, Inc. (or any successor system), provided that any tender offer for at least a majority of your Equity Interests will be an Equity Transfer subject to Section 9.1.

9.3  **Conditions.**  We may, to the extent permitted by applicable law, condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions.  If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a licensee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new license applicant, pay the Application and Relicense Fees then in effect, sign the form of License Agreement we then offer in conversion transactions and agree to renovate the Facility as if it were

an existing facility of similar age and condition converting to the System, as we reasonably determine. We will provide a Punch List of improvements we will require after the transferee's Application is submitted to us. We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise. Our consent to the transaction will not be effective until these conditions are satisfied.

9.4 **Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee. No Transfer will be deemed to occur. You also must not be in default and you must comply with the application and notice procedures specified in Sections 9.3 and 9.6. Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the License Agreement form then offered prospective licensees. No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement. You must comply with this Section if you transfer the Facility to a Permitted Transferee. A transfer resulting from a death may occur even if you are in default under this Agreement.

9.5 **Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained shall be void, as between you and us. You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility.

9.6 **Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction. You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility. We will respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days. You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner. You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request.

10. **Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent. We will have no obligations to you after you are notified that our transferee has assumed our obligations under this Agreement except those that arose before we assign this Agreement.

## 11. Default and Termination.

**11.1 Default.** In addition to the matters identified in Section 3.1, you will be in default under this Agreement if (a) you do not pay us when a payment is due, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement. If your default is not cured within ten days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate this Agreement by written notice to you under Section 11.2. We will not exercise our right to terminate if you have completely cured your default, or until any waiting period required by law has elapsed. In the case of quality assurance default, if you have acted diligently to cure the default but cannot do so and have entered into a written improvement agreement with us within 30 days after the failing inspection, you may cure the default within 90 days after the failing inspection. We may terminate the License if you do not perform that improvement agreement.

**11.2 Termination.** We may terminate the License, or this Agreement if the Opening Date has not occurred, effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11.1 or we are authorized to terminate under Section 3.1, (2) you discontinue operating the Facility as a "Days Inn", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another license or franchise agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of Section 9 occurs, or a Transfer occurs before the relicensing process is completed, (11) you or any of your Equity Interest owners contest in court the ownership or right to franchise or license all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, or (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests.

## 11.3 Casualty and Condemnation.

**11.3.1** You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available. You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations. You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to

the Casualty. This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

11.3.2  You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date. This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority.

11.4  **Our Other Remedies.**  We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default. All Reservation System User Fees accrue during the suspension period. We may deduct points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards. Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform. We may omit the Facility from the Directory if you are in default on the date we must determine which Chain Facilities are included in the Directory. You recognize that any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief. We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice. Our consent or approval may be withheld if needed while you are in default under this Agreement or may be conditioned on the cure of all your defaults.

11.5  **Your Remedies.**  If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent to the obligation. To the extent permitted by applicable law, this action shall be your exclusive remedy. We shall not be responsible for direct, indirect, special, consequential or exemplary damages, including, but not limited to, lost profits or revenues.

12.  **Liquidated Damages.**

12.1  **Generally.**  If we terminate the License under Section 11.2, or you terminate this Agreement (except under Section 11.3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and Basic Reservation Charges during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term at the date of termination, whichever is less). If the Facility has

DAYEXHC1 2/98

13

been open for less than 24 months, then the amount shall be the average monthly Royalties and Basic Reservation Charges since the Opening Date multiplied by 24. You will also pay any applicable Taxes assessed on such payment. Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility. If we terminate this Agreement under Section 3 before the Opening Date, you will pay us within 10 days after you receive our notice of termination Liquidated Damages equal to one-half the amount payable for termination under Section 11.2. Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement. Our right to receive other amounts due under this Agreement is not affected.

12.2 **Condemnation Payments.** In the event a Condemnation is to occur, you will pay us the fees set forth in Section 7 for a period of one year after we receive the initial notice of condemnation described in Section 11.3.2, or until the Condemnation occurs, whichever is longer. You will pay us Liquidated Damages equal to the average daily Royalties and Basic Reservation Charges for the one year period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period if the Condemnation is completed before the one year notice period expires. This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority). You will pay no Liquidated Damages if the Condemnation is completed after the one year notice period expires, but you must pay the fees set forth in Section 7 when due until Condemnation is completed.

13. <u>**Your Duties At and After Termination.**</u> When the License or this Agreement terminates for any reason whatsoever:

13.1 **System Usage Ceases.** You will immediately stop using the System to operate and identify the Facility. You will remove all signage and other items bearing any Marks and follow the other steps detailed in the System Standards Manual for changing the identification of the Facility. You will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features.

13.2 **Other Duties.** You will pay all amounts owed to us under this Agreement within 10 days after termination. You will owe us Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a "Days Inn," including the Reservation System User Fees for so long as the Facility receives service from the Reservation System. We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11.4. We may also, to the extent permitted by applicable law, and without prior notice enter the Facility and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours, and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination. You will promptly pay or reimburse us for our cost of removing such items, net of the $10.00 purchase price for signage. We will exercise reasonable care in removing or painting over signage. We will have no obligation or liability to restore the Facility to its condition prior to

removing the signage. We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and supplies at the lower of their cost or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you.

**13.3  Advance Reservations.**  The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when the reservations are made and pay when due all related travel agent commissions.

**13.4  Survival of Certain Provisions.**  Sections 3.8 (as to audits, for 2 years after termination), 3.9 (as to information relating to the Term, for 2 years after termination), 3.13, 7 (as to amounts accruing through termination), 8, 11.4, 12, 13, 15, 16 and 17 survive termination of the License and this Agreement, whether termination is initiated by you or us, even if termination is wrongful.

**14.  <u>Your Representations and Warranties</u>.**  You expressly represent and warrant to us as follows:

**14.1  Quiet Enjoyment and Financing.**  You own, or will own prior to commencing improvement, or lease, the Location and the Facility. You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility. You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform you obligations under this Agreement.

**14.2  This Transaction.**  You have received, at least 10 business days prior to execution of this Agreement and making any payment to us, our current Uniform Franchise Offering Circular for prospective licensees. Neither we nor any person acting on our behalf has made any oral or written representation or promise to you that is not written in this Agreement on which you are relying to enter into this Agreement. You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement. You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement. You have obtained all necessary approvals of your owners, Board of Directors and lenders. Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject. Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application. You will submit to us the documents about the Facility, you, your owners and your finances that we request in the License Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement.

DAYEXHC1 2-98

15

14.3 **No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the circumstances. There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement.

## 15. <u>Proprietary Rights.</u>

15.1 **Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement. You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing.

15.2 **Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit. No good will shall attach to any secondary designator that you use.

15.3 **Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as licensor or licensee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location other than the Location. There are no territorial rights or agreements between the parties. You acknowledge that we are affiliated with or in the future may become affiliated with other lodging providers or franchise systems that operate under names or marks other than the Marks. We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, approved supplier lists, franchise sales personnel (or independent franchise sales representatives), etc.

15.4 **Confidential Information.** You will take all appropriate actions to preserve the confidentiality of all Confidential Information. Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement. You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software). You will use Confidential Information only for the Facility and to perform under this Agreement. Upon termination (or earlier, as we may request),

you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of the U.S. Copyright Act, as amended. Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years. We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information.

15.5 **Litigation.** You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual property, and (ii) or any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware. We alone handle disputes with third parties concerning use of all or any part of the System. You will cooperate with our efforts to resolve these disputes. We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material.

## 16. Relationship of Parties.

16.1 **Independence.** You are an independent contractor. You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. We and you have a business relationship based entirely on and circumscribed by this Agreement. No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement. You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.

16.2 **Joint Status.** If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly. The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities.

## 17. Legal Matters.

17.1 **Partial Invalidity.** If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect. If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected. However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this Agreement by written notice to you without penalty or compensation owed by either party.

17.2 **Waivers, Modifications and Approvals.** If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice. Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel. All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective.

17.3    **Force Majeure.** Neither you nor we shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform obligations results from: (a) windstorms, rains, floods, earthquakes, typhoons, mudslides or other similar natural causes; (b) fires, strikes, embargoes, war, or riot; (c) legal restrictions; or (d) any other similar event or cause beyond the control of the party affected. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, for a period not to exceed 60 days so long as a remedy is diligently sought by the affected party, except that no such cause other than a governmental or judicial order shall excuse payment of amounts owed at the time of such occurrence or payment of Recurring Fees and other amounts due to us subsequent to such occurrence.

17.4 **Notices.** Notices will be effective if in writing and delivered by facsimile transmission with confirmation original sent by first class mail, postage prepaid, by delivery service, with proof of delivery, or by first class, prepaid certified or registered mail, return receipt requested, to the appropriate party at its address stated below or as may be otherwise designated by notice. Notices shall be deemed given on the date delivered or date of attempted delivery, if refused.

Your name:    ANJANI, INC.
Your address:  2739 North Florida Avenue, Tampa, Florida 33602, ,
               Attention: Amrat M. Anand
Your fax No.:

Days Inns of America, Inc.:
Our address:   6 Sylvan Way, P.O. Box 278, Parsippany, New Jersey 07054-0278
               Attention:  Vice President-Franchise Administration;
Fax No.       (973) 496-5359

DAYEXHC1 2/98                            18

**17.5  Remedies.**  Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity.  The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement.  You consent to and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

**17.6  Miscellaneous.**  This Agreement will be governed by and construed under the laws of the State of New Jersey.  The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey.  This Agreement is exclusively for the benefit of the parties.  There are no third party beneficiaries.  No agreement between us and anyone else is for your benefit.  The section headings in this Agreement are for convenience of reference only.  We may unilaterally revise Schedule C under this Agreement.  This Agreement, together with the exhibits and schedules attached, is the entire agreement (superseding all prior representations, agreements and understandings, oral or written) of the parties about the Facility.

**17.7  Waiver of Jury Trial.  The parties waive the right to a jury trial in any action related to this Agreement or the relationship between the licensor, the licensee, any guarantor, and their respective successors and assigns.**

**18.   Special Stipulations.**   The following special stipulations apply to this Agreement and supersede any inconsistent or conflicting provisions.  These are personal to you and are not transferable or assignable except to a Permitted Transferee.

**18.1  Special Royalty.**  Notwithstanding Section 7.1, the Royalty rate on Gross Room Revenues accruing during the following periods will be as follows:

18.1.1  The Royalty shall be **five and five tenths percent (5.5%)** of Gross Room Revenues for the first License Year; and

18.1.2  The Royalty shall be at the rate specified in Section 7.1 after the first License Year.

18.1.3  The Royalty rate changes set forth in this Section automatically terminate without notice or opportunity to cure, and the Royalty shall reset to the rate specified in Section 7.1, if and as of the date (i) a Termination occurs, (ii) we send you a notice of default and you fail to cure the default within the time specified, if any, in the notice of default or, (iii) after you satisfy the Improvement Obligation, the Facility receives a quality assurance inspection score of less than 425 (or its then equivalent) and the Facility fails to achieve a quality assurance inspection score of at least 425 in a reinspection to be performed not less than 30 days after the initial inspection.

19



18.2  **Your Additional Termination Right.** You may terminate the License without cause or penalty effective only on the **fifth and tenth  anniversary** of the Opening Date provided you give us at least six (6) months prior written notice of termination and you are not in default under this Agreement at the time notice must be given or at the effective date of termination.  You will pay no Liquidated Damages if you comply with the preceding sentence and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination.  Your rights under this Section will automatically terminate without notice if and as of the date (i) a Termination occurs, (ii) you fail to cure any default under this Agreement within the time permitted, if any, in the notice of default we send you, or (iii) after the Facility satisfies the Improvement Obligation, the Facility scores less than 425 (or its then equivalent) on a quality assurance inspection and then fails to achieve a score of at least 425 (or its then equivalent) in a reinspection to be performed no sooner than 30 days after the initial inspection.

18.3  **Our Additional Termination Right.**  We may terminate the License without cause or penalty effective only on the **fifth and tenth  anniversary** of the Opening Date provided we give you at least six (6) months prior written notice of termination.  You will perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination.  You will pay no Liquidated Damages if we terminate the License under this Section and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination.

**{Balance of Page Intentionally Left Blank}**



IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first stated above.

**WE:**
**DAYS INNS OF AMERICA, INC.**

By: _____

    C. Wayne Miller
    Vice President
    Franchise Administration

Attest: _____

    Assistant (Secretary)

**YOU**, as licensee:
**ANJANI, INC.**

By: _____

    Amrat M. Anand
    President

Attest: _____



20b

## APPENDIX A

## DEFINITIONS

Agreement means this License Agreement.

Application Fee means the fee you pay when you submit your Application under Section 6.

Approved Plans means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Section 3.

Casualty means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control.

Chain means the network of Chain Facilities.

Chain Facility means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks.

Condemnation means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation.

Conference Fee means the fee we charge for your attendance at a conference for Chain Facilities and their licensees when and if held.

Confidential Information means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence. Confidential Information includes the "Rules of Operation Manual" and all other System Standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the Reservation System software and applications software.

Declaration means the Declaration of License Agreement you and we sign under Section 5.

Design Standards mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility.

Directory means the general purpose directory we publish listing the names and addresses of Chain Facilities, and at our discretion, other Days Inn facilities located outside the United States, Canada and Mexico.

Effective Date means the date that you first take possession of the Facility.

Equity Interests shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests.

Equity Transfer means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those disclosed on Schedule B, as in effect prior to the transaction. Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes. An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner. An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date. An Equity Transfer does not occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners. An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority.

Facility means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties existing at the Location on the Effective Date or afterwards.

FF&E means furniture, fixtures and equipment.

FF&E Standards means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility.

Food and Beverage means any restaurant, catering, bar/lounge, entertainment, room service, retail food or beverage operation, continental breakfast, food or beverage concessions and similar services offered at the Facility.

Gross Room Revenues means gross revenues attributable to or payable for rentals of guest rooms at the Facility, including all credit transactions, whether or not collected, but excluding separate charges to guests for Food and Beverage, room service, telephone charges, key forfeitures and entertainment; vending machine receipts; and federal, state and local sales, occupancy and use taxes.

Improvement Obligation means your obligation to either (i) renovate and upgrade the Facility, or (ii) construct and complete the Facility, in accordance with the Approved Plans and System Standards, as described in Section 3.

Indemnitees means us, our direct and indirect parent, subsidiary and sister corporations, and the respective officers, directors, shareholders, employees, agents and contractors, and the successors, assigns, personal representatives, heirs and legatees of all such persons or entities.

Initial Entry Charge means the fee you are to pay for gaining access to the Reservation System when you sign this Agreement and on the first and second anniversaries of the Effective Date under Section 6.2.

Initial Fee means the fee you are to pay for signing this Agreement as stated in Section 6.1.

License means the non-exclusive license to operate the type of Chain Facility described in Schedule B only at the Location, using the System and the Mark we designate in Section 1.

License Year means the one-year period beginning on the Opening Date and each subsequent anniversary of the Opening Date and ending on the day preceding the next anniversary of the Opening Date.

Liquidated Damages means the amounts payable under Section 12, set by the parties because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty.

Location means the parcel of land situated at 551 East SR 44, Wildwood Florida 34785, as more fully described in Schedule A.

Losses and Expenses means all payments or obligations to make payments either (i) to or for third party claimants by any and all Indemnitees, including guest refunds, or (ii) incurred by any and all Indemnitees to investigate, respond to or defend a matter, including without limitation investigation and trial charges, costs and expenses, attorneys' fees, experts' fees, court costs, settlement amounts, judgments and costs of collection.

Maintenance Standards means the standards specified from time to time in the System Standards Manual for repair, refurbishment and replacement of FF&E, finishes, decor, and other capital items and design materials in Chain Facilities.

Marks means, collectively (i) the service marks associated with the System published in the System Standards Manual from time to time including, but not limited to, the name, design and logo for "Days Inn" and other marks (U.S. Reg. Nos.: 1,160,430; 1,160,431; 1,420,612; 1,469,518; and 1,003,834) and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests.

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere.

Minor Renovation means the repairs, refurbishing, repainting, and other redecorating of the interior, exterior, guest rooms, public areas and grounds of the Facility and replacements of FF&E we may require you to perform under Section 3.16.

Minor Renovation Ceiling Amount means $3,000.00 per guest room.

Minor Renovation Notice means the written notice from us to you specifying the Minor Renovation to be performed and the dates for commencement and completion given under Section 3.16.

Opening Date means the date on which we authorize you to open the Facility for business identified by the Marks and using the System.

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations.

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor.

Punch List means the list of upgrades and improvements attached as part of Schedule B, which you are required to complete under Section 3.

Recurring Fees means fees paid to us on a periodic basis, including without limitation, Royalties, Reservation System User Fees, and other reservation fees and charges as stated in Section 7.

Relicense Fee means the fee your transferee or you pay to us under Section 7 when a Transfer occurs.

Reservation System User Fees means the fees you pay to us under Section 7 and Schedule C for reservation services, including the Basic Reservation Charge and any other fees we charge for services provided by or through the Reservation System.

Reservation System or "Central Reservation System" means the system for offering to interested parties, booking and communicating guest room reservations for Chain Facilities described in Section 4.2.

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility.

Royalty means the monthly fee you pay to us for use of the System under Section 7(a). "Royalties" means the aggregate of all amounts owed as a Royalty.

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify which at present includes only the following:  (a) the Marks; (b) other intellectual property, including Confidential Information, System Standards Manual and know-how; (c) marketing, advertising, publicity and other promotional materials and programs; (d) System Standards; (e) training programs and materials; (f) quality assurance inspection and scoring programs; and (g) the Reservation System.

System Standards means the standards for the participating in the System published in the System Standards Manual, including but not limited to Design Standards, FF&E Standards, Marks Standards, Operations Standards, Technology Standards and Maintenance Standards and any other standards, policies, rules and procedures we promulgate about System operation and usage.

System Standards Manual means the Operating Policies Manual, the Planning and Design Standards Manual and any other manual we publish or distribute specifying the System Standards.

Taxes means the amounts payable under Section 7.2 of this Agreement.

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities.

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5.

Termination means a termination of the License under Sections 11.1 or 11.2 or your termination of the License or this Agreement.

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility. A Transfer does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction.

"You" and "Your" means and refers to the party named as licensee identified in the first paragraph of this Agreement and its Permitted Transferees.

"We", "Our" and "Us" means and refers to Days Inns of America, Inc., a Delaware corporation, its successors and assigns.

## SCHEDULE A

(Legal Description of Facility)

## SCHEDULE B

PART I:       YOUR OWNERS:

Name                          Ownership Percentage                   Type of Equity Interest

Amrat M. Anand 50.0% common stock Jitendra Patel 31.0% common stock Narendra Bhatt 19.0% common stock

PART II:      THE FACILITY:

Primary designation of Facility: Days Inn

Number of approved guest rooms: 130

Parking facilities (number of spaces, description): 130

Other amenities, services and facilities:

PART III:     DESCRIPTION AND SCHEDULE OF RENOVATIONS TO BE
COMPLETED AS THE IMPROVEMENT OBLIGATION:

{Punch List attached}



### FRANCHISOR: DAYS INNS OF AMERICA, INC.

## "SCHEDULE B"
## PUNCHLIST FOR CHANGE OF OWNERSHIP
## MARCH 5, 1999

| FACILITY | TIER | GUESTROOMS |
|---|---|---|
| Days Inn #2554 | Inn | 120 |
| 551 E. SR 44 | | |
| Wildwood, Florida 34785 | | |

**OWNER/APPLICANT**
Sonni Patel
(813) 224-9582

**FRANCHISE ADMINISTRATION**
Alex Dembowski
(973) 496-5224

**Q.A. REPRESENTATIVE**
Curt Keeton

### PROPERTY CONDITION SUMMARY

This 25 year-old property consists of one L-shaped, 2 story, double loaded, exterior corridor building constructed of cement block with stucco façades. Building exterior, public areas and guestrooms will require some upgrading. Landscaping will be required to enhance curb appeal.

Market consists of 95% interstate traffic and 5% commercial. Area competition includes the Super 8, Wildwood Inn and Budget Suites.

| | EXISTING | STANDARD |
|---|---|---|
| Lobby Dimensions: | 1152 SF | 800 SF |
| Guestroom Dimensions: | 288 SF | 288 SF |

### COMPLETION TIME

All items listed in this punchlist must be completed within 120 days of the new license agreement unless otherwise noted.



## PROPERTY SIGNAGE

Remove "Pizza & Ribs" restaurant and bar from entrance sign. (Food and Beverage facilities are closed).

## PROPERTY EXTERIOR

1. **The Design and Development Department must approve all exterior renovation plans prior to commencement of work. Written approval must be obtained from the Design and Development Department for all exterior renovation plans prior to the commencement of work. These plans must be provided by the architect or general contractor. The Company reserves the right to require additional renovations if written approval of renovation plans was not obtained, or the actual renovations vary materially from the approved plans. For assistance with design concepts, contact the Design/Development Department at (973) 496-2525. Renovate to include:**
   a. Construct staircase towers and incorporate Company design features.
   b. Pressure wash building exteriors
   c. Paint doors and railings.
   d. Professionally clean and chemically treat all walkways and breezeways to eliminate any stained or discolored areas.
   e. Deep clean HVAC louvers to eliminate stains. Some replacement may be required.

2. Pressure wash pool deck to eliminate stains.

3. Re-seal and stripe parking lot.

4. Manicure existing landscaping; provide additional seasonal flowers and plentiful ground cover (mulch and river rock) to enhance curb appeal.

## PUBLIC AREAS

1. Recommend an area rug in the lobby seating area.



## PUBLIC AREAS CONTINUED

2.  Recommend condensing gift area and displaying merchandise on shelves/racks to enhance lobby décor.

3.  The owner is responsible to provide facilities to assist the handicapped in accordance with Local, State and Federal codes, regulations and ordinances.

4.  Deep clean vending area concrete to eliminate calcium build-up.  Recommend painting with a non-skid paint.

5.  Replace worn floor in commercial laundry.

## FOOD AND BEVERAGE FACILITIES

1.  There is no restaurant available on site that serves breakfast therefore; the property must provide a continental breakfast consisting of fruit juices, coffee, decaffeinated coffee, tea, pastries, muffins, croissants or local specialties during breakfast hours (6:00 a.m. - 10:00 a.m.).

2.  Restaurant/lounge is currently closed and used for storage.  If facility is opened to the public in the future; ensure all F F and E meets all city and local codes.

## GUESTROOMS/BATHS (Rooms Inspected): 159, 145, 150, 156, 172, 108, 115, 127, 213, 225, 245, 255, 230, 242, 256, 212

1.  Ensure the existing electronic lock system meet Company standards.  The system must comply with the following specifications:
    *   Locks must "rekey" with each room rental.  Any and all previous key cards must be automatically voided with each rental.
    *   Each lock system must have a power-down backup system.  This is to be used if there is an interruption in power supply to the property so that the guests may continue to be checked in and the system continues to be serviced.
    *   Individual locks must have emergency override capabilities.  Emergency keys must be able to retract the deadbolt and latchbolt.
    *   Each lock system must provide an audit trail and individual locks must have an interrogation feature.



## GUESTROOMS/BATHS CONTINUED

* Door hardware must meet ADA specifications at time of installation (i.e. lever type handles instead of knobs).
* A full mortise lockset is required to have a two point latching system.
* Deadbolts must be a full one inch hardened steel bolt that is thrown or projected with a guest operated turn-piece inside the guest room.
* Latchbolts must have a 3/4-inch throw with a deadlocking latch feature.
* Locksets must have an anti-panic feature whereby the deadbolt and the latchbolt are retracted simultaneously by the guest when exiting the room.
* When the deadbolt had been thrown or projected by the guest, all key cards, including housekeeping keys, must be inoperable. This excludes the emergency key.

2. Install a one way, doorknob latchset in addition to the existing separate, non-keyed, 1" deadbolt lock on all connecting room doors. Operating knobs must be located on room side only with flush plates between doors.

3. Renovate guestrooms to include the following:
   a. _ All furniture, finishes and fixtures must coordinate with other room furnishings.
   b. Replace wallcovering where torn or with visible seams as in rooms #156, #108 and #145. Company requires either vinyl wallcovering (minimum of 15 ounce) or an approved textured finish.
   c. Paint ceiling where stained as in room #127.
   d. Professionally clean carpet however, if carpet grades below a "B" on the Quality Assurance inspection, carpet must be replaced. Minimum of 28 oz. cut pile, wall to wall carpet with padding is required. Recommend 30 oz.
   e. Replace buckling or peeling credenzas as in room #108.
   f. Replace leisure chairs as in room #256 to eliminate burn holes and stains. The replacement of mismatched leisure chairs is required at this time (i.e. oak finished chairs and ash finished casegoods). Two fabric-covered chairs per room are required.
   g. Replace tarnished lamps as in room #242. Ensure that all light cords are not exposed.
   h. Replace broken HVAC grills as in room #150.
   i. Replace draperies that are stained or have peeling backs as in room #156. New draperies must have blackout capabilities, be pleated to double fullness, provide for overlapping of panels and must be baton or mechanically operated.
   j. Replace king bedsets (mattress and boxsprings) to eliminate all that are stained, sagging or have loss of support as in rooms #225 and #122
   k. Replace clothes racks where severely tarnished as in room #122.



## *GUESTROOMS/BATHS CONTINUED*

4.    Renovate bath area to include the following:
    a.    Replace vanities and sinks where chipped or rusted as in room #230.  Corian, cultured marble or a light, neutral laminate are acceptable options.  Ensure vanities have adequate skirting and a concealed support system.
    b.    Replace plumbing fixtures/trim (sinks or tubs) where tarnished or corroded (faucets, drains rings, etc.)
    c.    Replace wallcovering where peeling as in room #230.  Company requires either vinyl wallcovering (minimum of 15 ounce) or an approved textured finish.
    d.    Repair/paint ceilings where peeling or stained as in rooms #230 and #115.
    e.    Replace bathroom flooring.  Company requires minimum 2" or larger single color ceramic tile (recommend 6"-8" tile).
    f.    Deep clean tub grout to eliminate mildew build-up.
    g.    Deep clean/replace non-skids to eliminate discoloration.
    h.    Replace broken toilet seat bumpers as in room #150.

5.    Company requires that all properties maintain housekeeping at the highest levels.  We strongly recommend that the property implement housekeeping training programs to ensure customer satisfaction.



HANDWRITTEN OR UNAUTHORIZED REVISIONS TO THIS PUNCHLIST ARE NOT VALID AND DO NOT BIND THE FRANCHISOR. ANY AND ALL REVISIONS TO THIS PUNCHLIST MUST BE MADE AND APPROVED BY THE FRANCHISOR'S QUALITY ASSURANCE DEPARTMENT.

This Punchlist identifies items that require action due to meet the Franchisor's standards. The Franchisor does not warrant that completion of the items on this Punchlist will cause the converting facility to be in compliance with any applicable federal, state, local codes, ordinances or regulations. You (and your architect, contractor and engineer, if applicable) are solely responsible for conforming the Facility to the requirements of federal, state and local codes, ordinances and regulations that may apply to your site.

This Punchlist has been prepared on the basis of a random sample inspection of the Facility on the date specified. The owner is responsible for meeting all Franchisor Standards. All repairs, replacements and improvements must cause the item to meet or exceed the Franchisor's standards published in the Standards of Operation and Design Manual.

This Punchlist will be subject to revision at the discretion of the Franchisor if the condition of the facility changes materially or the License (Franchise) Agreement to which this is attached is executed more than 90 days after the date of the Punchlist. Note that ordinary wear and tear, particularly during busy seasons, may result in the need for additional work to meet entry standards of the Franchisor.

This is not a License (Franchise) Agreement; the Company is not bound by this punchlist unless and until the Company signs the License (Franchise) Agreement for the inspected facility.

**Note:** Any item on this Punchlist that is not required prior to the new license agreement will continue to be evaluated for appearance and condition during any and all Q.A. evaluations conducted in the interim period.

2554 CO D1



## SCHEDULE C

### RESERVATION SYSTEM USER FEES
### PROPERTY TO PROPERTY INCENTIVE PROGRAM
### February 1998

The Basic Reservation Charge is equal to 2.3% of Gross Room Revenues.

The GDS Fee described in Section 7 is $4.00 per gross reservation communicated through the Global Distribution System and $2.50 per gross reservation booked through the Internet. The travel agent commission described in Section 7 is 10% of the Gross Room Revenues generated by each reservation originated by the agent. The general sales agent commission (also known as international sales office commission) and the "property to property" incentive program sales commission payable to another Chain Facility licensee, is 5% of the Gross Room Revenues generated by each reservation originated in an area served by a general sales agent/international sales office or by the other Chain Facility.

We reserve the right to increase or modify the Basic Reservation Charge and any other Reservation System User Fees for all Chain Facilities in the United States and to add other fees and charges for new services, at its sole discretion as to amount or formula from time to time but with at least 30 days prior written notice, to reflect changes in its fully allocated costs of providing Reservation System-related services, and to add, drop or modify the types of reservation services offered.

You will receive an incentive commission equal to 5% of the Gross Room Revenues generated by a reservation originated through the Facility's Reservation System terminal. We may establish rules and procedures for this program in the Manuals. Your incentive commissions are payable monthly in arrears. We may use your incentive commission payments to offset amounts you owe us for Recurring Fees and other charges, or owe our Affiliates for other fees and charges.

# EXHIBIT B

# EXHIBIT C

Location: Wildwood, FL
Site: 02554-87760-03-DAY

## CONNECTIVITY EQUIPMENT LEASE AND SERVICES ADDENDUM
## FOR DIRECWAY TRANSITIONING SITES

This Connectivity Equipment Lease and Services Addendum (the "Addendum") by and between Days Inns Worldwide, Inc. ("we," "our," "us") and **ANJANI, INC.** ("you," "your") is dated ~~June 20~~, 2011 (the "Addendum Effective Date"). This Addendum supplements that certain Franchise or License Agreement dated April 20, 1999(the "Agreement") between you and us. If you or a prior franchisee who transferred the Facility to you ("Former Franchisee") previously signed a Satellite Connectivity Services Addendum or another Connectivity Equipment Lease or Services Addendum (the "Former Addendum") , this Addendum supersedes and terminates the Former Addendum. Any terms not defined in this Addendum but defined in the Agreement shall have the meaning set forth in the Agreement. In the event of any inconsistency between the Agreement and this Addendum, this Addendum shall govern.

Notwithstanding anything to the contrary set forth in the Agreement, the following provisions shall supersede and apply:

1. Services. Either you or the Former Franchisee previously entered into the Former Addendum under which we and/or our communications services supplier ("Supplier") leased certain connectivity equipment (the "Existing Equipment") and provided certain connectivity services (the "Existing Services") for the Facility in order for the Facility to access the Central Reservation System, the Enterprise Data Warehouse, the Email Network and the Brand Information Source (as those terms are defined in the Software and Services Agreement). We and you have agreed to replace the Existing Equipment and Services at the Facility with new connectivity equipment (the "New Equipment") and certain new connectivity services (the "New Services") as selected by you on the signature page and as described in Schedule I. Until then, we shall continue to lease the Existing Equipment and provide the Existing Services to you and you shall continue to pay the "Monthly Service Charges" for them as set forth in Section 6. The Existing Equipment and the New Equipment are collectively referred to as the "Equipment". The Existing Services and the New Services are collectively referred to as the "Services". The Equipment and Services are collectively referred to as the "Property Communication System".

2. Site Information. You will furnish us and/or Supplier with any information requested about the condition and/or location of the Existing Equipment. We or Supplier, in our sole discretion, will determine whether any of the Existing Equipment is reusable and can be integrated with the new connectivity equipment. In such case it will constitute part of the New Equipment leased under this Addendum. We or the Supplier, in our sole discretion, will determine the placement of the New Equipment at the Facility, which is intended to ensure the optimal performance of the New Services.

3. Installation.

(a) Supplier will schedule installation of the New Equipment at the Facility during regular business hours, when possible. As a condition to the lease and installation of the New Equipment at the Facility, you must (i) follow any instructions we or Supplier provide you to prepare the

Facility for installation,  and (ii) surrender the Existing Equipment to Supplier, except any of the existing Equipment we or Supplier chooses to integrate into the New Equipment.

(b)  You will allow installation personnel reasonable access to all areas of the Facility necessary to perform the installation. You will obtain in advance, if necessary, any required permits, approvals or consents from any governmental authority, your landlord or mortgagee to install the New Equipment at the Facility, including access to the premises of a third-party, if necessary, to complete the installation.   You will permit the installation of certain New Equipment at technology appropriate locations at the Facility.  You will furnish to the installation personnel, free of charge, adequate electrical power, local telephone service, water and other utilities necessary to perform the installation.

(c)  The Property Communication System includes a dial-backup feature.  To support this capability, you must maintain either a dedicated telephone line as provisioned by your local telecommunications provider or a dedicated analog PBX extension configured with dial-out only services.

(d)  If you comply with the provisions of this Section 3 and our instructions for preparing the Facility for installation of the New Equipment on your scheduled installation date, there will be no charge for a "Standard Installation" as defined in Schedule 1.  If your installation involves equipment, cabling, hardware or labor, beyond what is included in the Standard Installation package, you must pay the additional fees and charges set forth in Schedule 3, plus an administrative charge of no more than $50.00.  If (i) you postpone a scheduled installation with less than seven (7) days prior written notice to us, or (ii) an installation is delayed or aborted because you did not comply with this Section 3 (collectively, a "Cancellation"), you will pay us an Installation Cancellation Charge of $1,000.00 within five (5) days after our written notice to you.  If a second Cancellation occurs, you will be in default under this Addendum.

4.  Operations; Authorizations.

(a)     You will not move the Equipment without our prior written consent.  You will maintain the Equipment according to the environmental conditions we specify.  Upon reasonable prior notice, you will give us or Supplier reasonable access to inspect the Equipment.

(b)     You will maintain, at your expense, any necessary permits and licenses required for your use of the Property Communications System.

(c)     We will provide through Supplier the Services during the Term so long as you are not in default under this Addendum, the Agreement or any other agreement between you and us or our affiliates.

5.  Support and Maintenance.   We will provide you a toll-free number for reporting Property Communications System problems.  You will contact the number promptly when and if you experience any problems with the Property Communications System, or if any casualty affects the Property Communications System.  We or Supplier will work with you to determine if the problem requires support or maintenance services.  The support and maintenance services we or Supplier will provide you

are listed in Schedule 2 to this Addendum, it being understood by you that we or Supplier will not be responsible for any other support and maintenance services except as listed therein. You will allow maintenance personnel reasonable access to all areas of the Facility necessary to perform these support and maintenance services.

6. Monthly Service Charges.  You will pay to us for the Property Communication System a "Monthly Service Charge" listed in Schedule 3 to this Addendum during the "Initial Term" and continuing during any "Renewal Term", or such lesser amount as we determine to charge all similarly situated franchisees in our sole discretion during any Renewal Term and so notify you in writing.  Charges will begin to accrue on the Addendum Effective Date. We will invoice you in advance each month for the Monthly Service Charge for each full or partial month. You will pay the invoice amount to us upon receipt.  You will also pay any excise, sales, use, state personal property tax or other local, state or federal taxes or fees assessed in connection with the Property Communications System. We may apply any amounts received to any outstanding invoices in any order.  We may increase the Monthly Service Charge by up to 5% per year, computed on a cumulative basis.  Each increase will go into effect on an anniversary of the Addendum Effective Date and will continue in effect until the next adjustment by us in accordance with this Section.

7. Term.  This Addendum will be effective from the Addendum Effective Date and shall continue in full force and effect for a period (the "Initial Term") ending on the last day of the thirty-sixth (36th) month, with counting beginning on the first day of the month following the Start Date for the New Equipment, unless earlier terminated in accordance with the terms of this Addendum or the Agreement. At the end of the Initial Term, this Addendum shall automatically renew on a quarterly basis (a "Renewal Term") until either you or we give written notice of termination to the other party at least ninety (90) days before the end of the Initial Term or any subsequent Renewal Term. The "Start Date" is the date the Equipment is installed at the Facility and it begins operating.  By way of example only, if this Addendum were executed on January 15, 2011 and the New Equipment installed at the Facility on March 15, 2011, the Initial Term would begin on January 15, 2011. It would then continue for 36 months beginning April 1, 2011, the first full month following installation of the New Equipment at the Facility. Notwithstanding the above, if we do not install New Equipment at the Facility, for any reason, by the end of the twelfth (12th) month after the Addendum Effective Date, the Initial Term will terminate.  It will then automatically renew on a quarterly basis until either you or we give written notice of termination to the other party at least ninety (90) days before the end of the Initial Term or any subsequent Renewal Term. The Initial and Renewal Term may sometimes collectively be referred to as the "Term".

8. Software.

(a)  We assign to you Supplier's non-exclusive licenses to use the operating systems in connection with the Equipment (the "Software"), subject to the conditions and limitations in this Addendum and the Software licenses. The Software may be used only in conjunction with the Equipment at the Facility, at no other location, and for the sole purpose of obtaining the Services in connection with the operation of your franchise with us.  You may not disclose, reverse engineer, alter, add to, modify or copy the Software for any reason.  You may not, directly or indirectly, distribute, sell, assign, transfer, offer, disclose, lease or license the Software to a third party.

(b)  Title to and ownership of the Software shall remain with us or those entities that have authorized us to sublicense and use them, free of any claim or right of yours or the holder of any security interest, lien or encumbrance on the Facility or any of your other property. If any person attempts to establish any legal right in the Software, you will promptly notify us in writing.

9.  Title to Equipment; Risk of Loss; Insurance.  You are leasing the Equipment and have no right, title, or interest in it other than as specified in this Addendum it being understood by you that in the event that the Agreement or this Addendum expires or terminates for any reason, the Equipment must be returned or otherwise disposed of in accordance with our reasonable requirements. The Equipment is not intended to be a fixture or permanently attached to any real property.  You will not allow any security interest, landlord's lien, or any other lien or encumbrance to be placed on or attach to the Equipment.  If any person attempts to establish any legal right in or to the Equipment, you will promptly notify us in writing. We or Supplier may, at our or their option, mark, label or otherwise identify the Equipment.  You will not remove or deface such identification.  You bear the entire risk of loss, theft, damage or destruction of any installed Equipment from any causes whatsoever, unless we or Supplier directly caused the loss, damage or destruction.  You will promptly notify us if the Equipment is damaged for any reason.  You will maintain "all-risk" fire and extended casualty (including any acts of nature such as lightning, wind, rain, snow, flood, fire and hail) insurance for the Equipment during the Term of at least $25,000, and you name us, Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, their successors and assigns as additional insureds and loss payees.  Upon our request, you will furnish us with a certificate of insurance showing the insurance coverage is in effect, the named insured and additional insureds. Upon our request you must furnish us with an updated certificate of insurance each year when renewed and every time a change is made in your insurance policy or insurance carrier.

10.  Force Majeure.  If performance by you, Supplier or us is delayed or prevented because of strikes, inability to procure labor or materials, defaults of suppliers or subcontractors, delays or shortages of transportation, failure of power or telephone transmissions, restrictive governmental laws or regulations, weather conditions, or other reasons beyond the reasonable control of the party, then performance of such acts will be excused and the period for performance will be extended for a period equivalent to the period of such delay.  Delays or failures to pay resulting from lack of funds will not be deemed delays beyond your reasonable control.

11.  No Warranties; Security; Indemnity.

(a)  WE MAKE NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY ABOUT THE PROPERTY COMMUNICATIONS SYSTEM, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, OR ITS CONFORMANCE TO SPECIFICATIONS OF ANY ORDER OR DOCUMENTATION.

(b)  We do not warrant any service levels, connection to or transmission over the Property Communications System.  Your use of any information obtained through the Services is at your own risk.  We deny any responsibility for the accuracy or quality of the information obtained through the Services.  We do not warrant that the Property Communications System will operate uninterrupted or error-free.

(c)  You may not use the Property Communications System to take any actions or make any statements that (i) infringe on another party's copyright, patent, trademark, trade secret or other proprietary rights or rights of publicity or privacy; (ii) violate any applicable law, statute, ordinance or regulation; (iii) are defamatory, trade libelous or threatening; (iv) are pornographic or obscene; (v) violate any laws regarding unfair competition, discrimination or false advertising; (vi) result in the distribution of viruses, Trojan horses, worms, time bombs, cancelbots, chain letters or other similar harmful or deleterious programming routines; or (vii) result in the unauthorized entry to any other network, machine or device accessible through the Services. You are responsible for all content transmitted from the Property Communications System using the Services.

(d)  You are responsible for user access security for the Property Communications System, and any unauthorized use of the Property Communications System. You must authorize and supervise the users of the Property Communications System. Nothing in this Addendum shall be deemed to give you permission or right to access the Property Communications System from locations other than the Facility.  It is further understood by you that terms and conditions governing remote access to Property Communications System, to the extent such remote access is or may become available, will be set forth in a separate Addendum to the Agreement.

(e)  We or Supplier may, at our sole discretion, institute security controls on the Services to protect the confidentiality, privacy, integrity and availability of your information and our information. These controls may include without limitation (i) requiring users to utilize unique identification and authorization; (ii) limiting certain levels of access to persons you authorize; (iii) implementing access controls on all data, software or other file-system objects to limit access to only authorized users; (iv) ensuring the integrity of all data stored or processed; and/or (v) preventing the loss of data processed or transferred.

(f)  You acknowledge that the Property Communications System is specifically authorized for the Facility's commercial use only, and is not intended for personal Internet use by your personnel or Chain guests. You further acknowledge that the primary function of the Property Communications System is to provide connectivity to and from the Central Reservation System, the Enterprise Data Warehouse, the Email Network and the Brand Information Sources. We or Supplier may, at our sole discretion, institute filters, screens, traps or other devices on the Services and block certain Internet content from being received at or transmitted from the Facility.  You agree that you will not install any foreign network devices such as routers, switches, or wireless access points and you understand and acknowledge that your failure to comply with this prohibition could potentially compromise the security of the Property Communications System. If foreign devices are found to have been added we reserve the right to temporarily disable the Service until such foreign devices have been removed from the Property Communications System network at your Facility.

(g)  You will indemnify and hold harmless us, our affiliates, successors and assigns and each of the respective directors, officers and employees associated with them against all claims of employees, agents, guests, and all other persons and entities, arising out of or in connection with your operation, use or non-use of the Property Communications System, including any content disseminated from the Property Communications System at the Facility.  We will not be liable to you

241145 Q1/10

or any other person or entity for personal injury, personal loss or property loss, including but not limited to, damage to the Facility, as a result of your operation, use or non-use of the Services and/or Equipment.

12.  Default; Termination; Attorney's Fees.

(a)  If you are in default under Section 11.1 of the Agreement, or any one of the events described in Section 11.2 of the Agreement that gives us the right to terminate occurs, or you are in default of this Addendum, or the Equipment becomes inoperable by your act or omission, or you assign or transfer, or attempt to assign or transfer the Services or Equipment without our consent, except as permitted under the Agreement, then to the extent permitted by applicable law, we shall have the right to suspend the Service and use of the Equipment, while the default remains uncured.  Additionally, we may, at our option, immediately terminate only this Addendum and not the Agreement, upon written notice to you, if (i) you commit a default under Section 11(c) of this Addendum above, (ii) you attempt to obtain an interest in, or assist another person or entity to obtain an interest in, the Equipment or the Software in violation of Section of 8(b) or 9 of this Addendum above, or (ii) you commit any other default of this Addendum and fail to cure such default within thirty (30) days after you receive notice of the default.

(b)  Upon the termination of this Addendum for any reason, you will permit us and/or Supplier reasonable access to Facility to remove the Equipment. YOU EXPRESSLY WAIVE ANY RIGHT TO NOTICE OF OR A HEARING WITH RESPECT TO REPOSSESSION AND CONSENT TO ENTRY INTO THE FACILITY BY US, SUPPLIER, OUR OR THEIR AGENTS OR REPRESENTATIVES TO REMOVE THE EQUIPMENT WITHOUT JUDICIAL PROCESS. If you fail or refuse to permit the peaceable entry to take possession of any Equipment, you will be liable for rental of any of the Equipment at the rate of Five Hundred Dollars ($500.00) per week from the date that we first attempt to retake it.

(c)  If we terminate this Addendum under Section 12(a) above, or in the event of any other early termination of this Addendum, you will pay us within 10 days following the date of termination "Addendum Early Termination Costs" as set forth in Schedule 3 to this Addendum. Addendum Early Termination Costs are in addition to (i) the cost of the Equipment, as determined by Supplier, if you do not return the Equipment to us or Supplier upon termination of this Addendum, (ii) any accrued but unpaid fees or amounts due us, and (iii) any de-installation and re-installation fees set forth in Schedule 3.  You and we acknowledge that actual damages are difficult or impossible to ascertain on the Addendum Effective Date, and the amount of the Addendum Early Termination Costs are a reasonable pre-estimate of the damages that will be incurred and is not a penalty. Our right to receive other amounts due under the Agreement and this Addendum is not affected by the payment to us of Addendum Early Termination Costs or vice versa.

(d)  The non-prevailing party will pay the costs and expenses, including reasonable attorneys' fees and the expenses, incurred by the prevailing party to enforce this Addendum.

**[Signatures follow on next page]**

241145 Q1/10

**CONNECTIVITY OPTION YOU HAVE SELECTED – Please check the applicable box**
*While franchisees have a choice of options available for the property management system to communicate with the Central Reservation System, not all services are available in all areas. Additionally, not all services will qualify for use as a valid transport. Managed DSL, Managed Cable and Managed VPN with Franchisee Provided Transport will need to be pre-qualified and pre-approved for use by us, in our reasonable discretion. If your preferred option does not qualify, you will need to select and install another option. If none of the above options qualify, you must install a Managed Satellite service.*

☐   HughesNet Managed Satellite

☐   HughesNet Managed DSL

☐   HughesNet Managed Cable

☒   HughesNet Managed VPN with Franchisee Provided Transport

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date set forth above.

**WE:**
Days Inns Worldwide, Inc.

By:_____
(Vice) President

**YOU,** as licensee:
**ANJANI, INC.**

By:_____
(Vice) President

241145 Q1/10

## HUGHESNET MANAGED VPN WITH FRANCHISEE PROVIDED TRANSPORT

### SCHEDULE 1
### VPN ACCESS & EQUIPMENT

### I.  Introduction.

The Agreement is for a managed Virtual Private Network ("Managed VPN") between the shared hub (the "Hub") of Hughes Network Systems, Inc. ("HNS") and a Managed VPN Firewall/Router at the Facility via a third party Broadband Provider connection which you procure. This network connectivity supports the following base services: Property Management System access to the Central Reservation System, the Electronic Data Warehouse, the Email Network and access to the Brand Information Source.

### II.  Your Responsibilities.

You acknowledge and accept that you will be responsible for procuring from a nationally or regionally recognized internet access provider (an "ISP") an operational business class broadband Internet access connection with a minimum bandwidth of 1.5Mbps or greater, with an available Ethernet interface that will allow: (i) internet control message protocol ("ICMP"), (ii) user datagram protocol ("UDP"), and (iii) internet security measures that support tunneling protocol ("IPSec") traffic at the Facility. This includes the physical circuit, which may be T1, digital subscriber line ("DSL"), or cable and the carrier–provided modem and/or router which serves as the demarcation point. We recommend that this connection be dedicated for the Property Management System and Facility back office functions only and segregated from any other networks at your Facility or other applications. If you choose to share a connection/circuit for other networks or applications which may result in a degradation of service or guest complaints, we reserve the right to require you to upgrade the bandwidth of the shared connection or replace it with a dedicated circuit that will not be shared.

You have complete responsibility for the portion of the Managed VPN consisting of the circuit and connectivity from the ISP's network to the demarcation point at the Facility. Your responsibilities regarding your ISP include, but are not limited to, the following:

- Installation, maintenance, and management of circuit and associated ISP provided hardware.
- Provision of an Ethernet interface from the ISP modem/router with an IP address (either static or dynamic).
- Provide the information specific to your ISP connection in order for HNS to correctly configure your services. See Schedule 4, below.
- Following installation and cutover, in the event of a problem, follow steps provided by our technical support group ("WHG Tech Support") to isolate connection/circuit issues.
- To escalate and troubleshoot connection/circuit issues with the ISP. This is not done by the WHG Tech Support.

You further acknowledge and agree that neither we nor HNS make any guarantees regarding service levels, performance, or availability of the connection provided to you by your ISP and neither we nor HNS shall have any responsibility or liability for failures surrounding service levels, performance, or availability of the connection.

241145 Q1/10

You must also provide an available analog phone line to connect to the HughesNet equipment's backup modem to be used for the dial backup service.

**III. Service Description.**

○   The Managed VPN Services.  The Managed VPN Services include the following:

- Provision and operation of the Hub by HNS on a 24 hour per day, 365 day per year to support the Managed VPN connection.
- Built-in redundancy via dial-backup capability in the event of primary path interruption. This is referred to as Virtual Automatic Dial Backup (VADB).  The VADB does not include your analogue telephone line for which you are responsible as further detailed in Section 3(c) of the Addendum.
- Remote monitoring and diagnostics, support, and centralized software delivery, excluding the ISP's circuit/connection.

○   The Equipment.  The Equipment includes standard equipment as described below.

- HNS provided  Managed VPN/Firewall/Router ( inclusive of Managed VPN configuration)
- Installation of an 8 port Ethernet Switch and 2 Ethernet data cables to connect to the local area network front desk PCs and PM Server.
- Cabling necessary to connect with the ISP broadband equipment onsite.

○   Installation.  Standard installations include the following:

- The use of necessary tools, including laptop computer and appropriate commissioning software, to install, commission, test and cutover HNS and your systems.
  - Activation and establishment of the Managed VPN.

241145 Q1/10

## HUGHESNET MANAGED VPN WITH FRANCHISEE PROVIDED TRANSPORT

### SCHEDULE 2
### SUPPORT AND MAINTENANCE

**Support and maintenance for the Managed VPN provided is limited to the Service and Equipment provided by HNS or us. The ISP will be responsible for support and maintenance of the circuit, related hardware, and connectivity from the ISP's network to the demarcation point and as indicated in Schedule 1, neither we nor HNS will have any liability or responsibility for failures of any such ISP service.**

You will receive the following Managed VPN maintenance and support services from us and/or HNS:

1) <u>Telephone Support</u>.  You may contact our WHG Tech Support center 24 hours per day, 365 days per year by calling a toll-free telephone access number to receive Service support. HNS will not directly supply support and should not be contacted.

2) <u>Corrective Maintenance</u>.  If WHG Tech Support and HNS determine that the Equipment is not operating properly, WHG Tech Support and/or HNS will restore the Equipment to good working condition by performing the following corrective maintenance as required:

   - Diagnostic testing to determine the existence and cause of the malfunction;
   - Removal and replacement of any malfunctioning field replaceable Equipment;
   - Repair or replacement of Equipment interconnecting cables;
   - Reloading initializing instructions and recommissioning;
   - Verification of proper operation and completion of service report; and
   - Notification to you and the control center that the Equipment has been restored to operational status.

3) <u>Limitations</u>.  Maintenance services do not include any of the following services:

   - Maintenance, repair or replacement of parts damaged or lost through catastrophe, accident, lightning, wind, theft, misuse, vandalism, fault or negligence of you, your employees or agents or causes external to the Equipment, including failure of, or faulty, electrical power or air conditioning, operator error, failure, or malfunction of data communication equipment we or HNS did not provide you, or from any cause other than intended and ordinary use;
   - Changes, modifications, or alterations in or to the Equipment by anyone other than HNS or us other than HNS approved upgrades and configuration changes; or
   - Deinstallation, relocation, or removal of the Equipment or any accessories, attachments, or other devices.
   - Configuration changes or modifications required due to changes made by the ISP. (i.e., if the ISP updates or modifies the circuit configuration such as IP addressing changes or relocating the ISP provided equipment within the facility.)
   - ISP-provided equipment, hardware and service.  Any ISP related issues or problems should be referred to the appropriate ISP support teams.

- Problems with third-party hardware, software, or networking equipment which is manipulated by, interoperates with, or operates in conjunction with the Software.

4) <u>Software Maintenance</u>. HNS will, as limited below, correct reported defects in the Software that cause the Software not to substantially perform in accordance with its applicable specifications, as promptly as commercially reasonable.

5) <u>Software Maintenance Service Limitations</u>. We and HNS have no responsibility to correct any defects in any Software that are caused by (i) modification of the Software by any person other than us or HNS; (ii) failure to install an update provided by us or HNS within 60 days after we or HNS provide it to you; or (iii) misuse or improper installation by you.

## HUGHESNET MANAGED VPN WITH FRANCHISEE PROVIDED TRANSPORT

### SCHEDULE 3
## MONTHLY SERVICE CHARGE AND OPTIONAL AND NON-STANDARD CHARGES

- Monthly Service Charge $105 per full or partial month

  Excludes any excise, sales, use, state personal property taxes, and or other Federal or state taxes or fees assessed, for which we may separately invoice you.

- Expedited Installation at your request $750 each
    - Requested with less than 15 business days notice
    - Charge is waived if HNS does not meet the requested date

- Aborted or Cancelled Installation $1000 each

  Charge will only apply in cases where the Installation has been cancelled or postponed by you within seven (7) days of the scheduled installation. (See Section 3(d) of the Connectivity Addendum above.), or if broadband connectivity is not active and completely functional at the Facility on the scheduled installation date.

- Deinstallation of HN7700SR Router $300 each

- Reinstallation Fee $300 each

- Site Relocation $600 each

    - Assumes same city deinstall/reinstall within 72 hours; otherwise $170 will be added for storage and shipping
    - Assumes that there is an active and fully functional ISP connection to the public Internet at the new location as required for the original location.

- Early Termination Costs and Fees

  If the Addendum is terminated under Section 12(a), or in the event of any other early termination of the Addendum, you will pay us all costs associated with such early termination ("Early Termination Costs") and an "Early Termination Fee".

    - Early Termination Costs will be calculated as follows:

        - Deinstallation & Reinstallation Costs for terrestrial equipment of $600 (plus additional transportation costs dependent upon the method of transport chosen and the specifics of the system at issue);

241145 Q1/10

- Loss value of the Equipment, as determined by Supplier, if you do not return the Equipment to us or Supplier upon termination of the Addendum; and
- Any accrued but unpaid fees or amounts due us.

- Early Termination Fee will be calculated as follows: The amount equal to the product obtained by multiplying the number of full and partial months remaining in the Term of the Addendum by the Monthly Service Charge in effect on the termination date multiplied by 70%. For example, if a site terminates after 10 months of service, the Early Termination Fee will be computed as follows: ((36-10) x $100) x .70 = $1820

- Demand Services Rate

  You shall be charged on a Time & Material (T&M) basis for out of scope Services which are not described elsewhere in this Schedule 3. This includes, but is not limited to, repairs required for the reasons set forth in Schedule 2, Section 3. The T&M charges are as follows:

  - Hourly Rate

    - Normal Hours (8am-5pm local time, Monday-Friday)    $125 per hour
    - After Hours Weekday (5pm-8am, Monday-Thursday)    $150 per hour
    - Weekend (5pm Friday–8am Monday)    $150 per hour

  - Travel Charge (flat rate per call)    $225

  - Replacement Costs for Damaged Equipment    TBD

- Special Equipment Charges

  In the event that special equipment is required for maintenance, it will be provided by HNS, if practical, and you will be billed for the actual cost to HNS plus 15%. At Facilities requiring special equipment for physical access, onsite repair time will be billed at prevailing rates for Demand Services specified above.

- Non-Standard/Exceptional Facility

  In the event that a Facility has unusual characteristics or HNS is requested to provide installation services that will require special handling or additional equipment, the Facility shall be subject to non-standard installation charges. Instances where extensive inside wiring is required to complete an installation, will be considered non-standard and will be completed on a quotation basis. Prior to any such work being performed, HNS will provide you a quote for review, which will be subject to your written approval.

## HUGHESNET MANAGED VPN WITH FRANCHISEE PROVIDED TRANSPORT

### SCHEDULE 4
### Required ISP Information

- The broadband connection at the Facility is specifically identified by unique TCP/IP addresses provided by the ISP. In order for the HNS Managed VPN firewall/router to be configured correctly, the following information must be provided:

  - An available IP address to be dedicated to the managed firewall/router; assigned dynamically via DHCP
  - The public facing Internet IP Address of the ISP connection itself. This can be obtained by accessing WWW.WHATISMYIP.COM or similar IP address locator service website.
  - If a dynamically assigned address is not available the following must be must be obtained from the provider:
    - A static IP address to be dedicated to the firewall/router.
    - The subnet mask assigned to the IP range for the connection
    - The Default Gateway IP address

- NOTE: Your ISP should be able to assist you with gathering this information.

241145 Q1/10

# EXHIBIT D

## GUARANTY

To induce Days Inns of America, Inc., its successors and assigns ("you") to sign the License Agreement (the "Agreement") with the party named as the "Licensee," to which this Guaranty is attached, the undersigned, jointly and severally ("we," "our" or "us"), irrevocably and unconditionally (i) warrant to you that Licensee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Licensee's obligations under the Agreement, including any amendments, will be punctually paid and performed.

Upon default by Licensee and notice from you we will immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement. Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Licensee, or settle, adjust or compromise any claims against Licensee. We waive notice of amendment of the Agreement. We acknowledge that Section 17 of the Agreement, including Sections 17.4 (Remedies, Choice of Venue and Consent to Jurisdiction) and 17.6 (Waiver of Jury Trial), applies to this Guaranty.

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Licensee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement.

WITNESS(ES):

GUARANTOR(S):

_____(Seal)
AMRAT M. ANAND

_____(Seal)
JITENDRA PATEL

_____(Seal)
NARENDRA BHATT

# EXHIBIT E



**WYNDHAM**

HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

November 9, 2011

Mr. Amrat M. Anand                                    **VIA 2 DAY DELIVERY METHOD**
ANJANI, INC.
2739 North Florida Avenue
Tampa, FL 33602

RE:   **NOTICE OF MONETARY DEFAULT RELATING TO DAYS® UNIT #2554-87760-3 LOCATED IN WILDWOOD, FL (THE "FACILITY")**

Dear Mr. Anand:

I write on behalf of DAYS INNS WORLDWIDE, INC. ("we," "us" or "our") regarding the License Agreement dated April 20, 1999 between ANJANI, INC. ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of November 4, 2011 your account is past due in the amount of **$117,012.60**. We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have 10 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Days System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default. By copy of this letter, we are also informing your guarantors of your default as well any lender with which we have an agreement regarding the Facility.

**WYNDHAM**

HOTEL GROUP

       

       

Mr. Amrat M. Anand
November 9, 2011
Page 2


We hope you will take this opportunity to resolve your monetary default.  If you have any
questions regarding your default or how it can be timely cured, please contact Operations
Support Desk at (800) 443-3009.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Commercial Capital Corporation (Lender)
        Jitendra Patel (Guarantor)
        Narendra Bhatt (Guarantor)
        Clyde Guinn
        Dianna Bayas
        Valerie Capers Workman

Page 1 of 11

Report Date : 04-NOV-11

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY) : 04-NOV-2011
Customer No              : 02554-87760-03-DAY
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               : No Bankruptcy Sites
Disputed                 : No
Finance Charges Included : Yes

Page 1 of 9

Report Date : 04-NOV-11

ITEMIZED STATEMENT
------------------

Customer No : 02554-87760-03-DAY
Address :     551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:   04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | Finance Charges | Total |
|----------|-----------|--------------|-------------|-----------------|-----|-----------------|-------|
| DEC-2009 | 41242364 | 31-DEC-09 | Actual-1800A-RE | 965.37 | 0.00 | 252.29 | 1217.66 |
|          | 41241412 | 31-DEC-09 | Actual-1210A-MA | 433.68 | 0.00 | 90.50 | 524.18 |
|          |          |              | Sub Total   | 1399.05 | 0.00 | 342.79 | 1741.84 |
| JAN-2010 | 21124549 | 22-JAN-10 | WYNREWARDS 5% | 190.50 | 0.00 | 55.05 | 245.55 |

Page 2 of 11

| | | | | | | |
|---|---|---|---|---|---|---|
| 41273110 | 31-JAN-10 | Actual-1800A-RE | 1157.81 | 0.00 | 334.67 | 1492.48 |
| 41254715 | 31-JAN-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 79.03 | 352.62 |
| 41255848 | 31-JAN-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 49.46 | 220.66 |
| 41272654 | 31-JAN-10 | Actual-1210A-MA | 755.10 | 0.00 | 218.21 | 973.31 |
| 41272349 | 31-JAN-10 | Actual-1000A-RO | 2516.98 | 0.00 | 727.34 | 3244.32 |
| 41251195 | 31-JAN-10 | 5052A-HARDWARE | 101.80 | 7.13 | 31.47 | 140.40 |
| | | **Sub Total** | 5137.88 | 36.23 | 1495.23 | 6669.34 |
| FEB-2010 | | | | | | |
| 21128380 | 22-FEB-10 | WYNREWARDS 5% | 286.08 | 0.00 | 78.20 | 364.28 |
| 41281991 | 28-FEB-10 | 5052A-HARDWARE | 101.80 | 7.13 | 29.79 | 138.72 |
| 41282442 | 28-FEB-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 46.80 | 218.00 |
| 41312838 | 28-FEB-10 | Actual-1000A-RO | 2832.95 | 0.00 | 774.78 | 3607.73 |
| 41313691 | 28-FEB-10 | Actual-1800A-RE | 1303.16 | 0.00 | 356.44 | 1659.60 |
| 41310651 | 28-FEB-10 | Actual-1210A-MA | 849.89 | 0.00 | 232.42 | 1082.31 |
| 41283217 | 28-FEB-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 74.80 | 348.39 |
| | | **Sub Total** | 5789.57 | 36.23 | 1593.23 | 7419.03 |
| MAR-2010 | | | | | | |
| TA0112381 | 03-MAR-10 | T/A COMMISSIONS | 11.55 | 0.00 | 3.15 | 14.70 |
| 1112381 | 03-MAR-10 | GDS & INTERNET | 5.43 | 0.00 | 3.25 | 8.68 |
| 10449314 | 10-MAR-10 | GUEST SRVCS TRA | 100.00 | 0.00 | 27.35 | 127.35 |
| 10449316 | 10-MAR-10 | GUEST SATISFACT | 70.80 | 0.00 | 19.38 | 90.18 |
| 30414571 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 258.73 | 1257.73 |
| 21130718 | 22-MAR-10 | WYNREWARDS 5% | 296.09 | 0.00 | 76.54 | 372.63 |
| 1118870 | 29-MAR-10 | GDS & INTERNET | 14.05 | 0.00 | 3.65 | 17.70 |
| 41331168 | 31-MAR-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 70.69 | 344.28 |

Page 2 of 9

Report Date : 04-NOV-11

ITEMIZED STATEMENT
-----------------

Customer No :  02554-87760-03-DAY
Address :  551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:  04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41328594 | 31-MAR-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 44.24 | 215.44 |
| | 41346213 | 31-MAR-10 | Actual-1000A-RO | | 3044.70 | 0.00 | 787.03 | 3831.73 |
| | 41347479 | 31-MAR-10 | Actual-1800A-RE | | 1400.56 | 0.00 | 362.07 | 1762.63 |
| | 41348219 | 31-MAR-10 | Actual-1210A-MA | | 913.41 | 0.00 | 236.13 | 1149.54 |
| | 41329127 | 31-MAR-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 28.15 | 137.08 |
| | | | Sub Total | | 7373.08 | 36.23 | 1920.36 | 9329.67 |
| APR-2010 | 30422459 | 05-APR-10 | OCT 2009 NT AUD | | 99.71 | 0.00 | 25.85 | 125.56 |
| | 30422340 | 05-APR-10 | OCT 2009 NT AUD | | 75.78 | 0.00 | 19.57 | 95.35 |
| | 30426704 | 14-APR-10 | ONLINE LRNG LIB | | 50.00 | 0.00 | 12.97 | 62.97 |
| | 1125494 | 18-APR-10 | GDS & INTERNET | | 8.70 | 0.00 | 2.07 | 10.77 |
| | 21134678 | 22-APR-10 | WYNREWARDS 5% | | 176.24 | 0.00 | 42.80 | 219.04 |
| | 41376684 | 30-APR-10 | Actual-1000A-RO | | 2809.91 | 0.00 | 682.78 | 3492.69 |
| | 41365374 | 30-APR-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 26.47 | 135.40 |
| | 41376109 | 30-APR-10 | Actual-1800A-RE | | 1292.56 | 0.00 | 314.06 | 1606.62 |
| | 41375959 | 30-APR-10 | Actual-1210A-MA | | 842.97 | 0.00 | 204.85 | 1047.82 |
| | 41364414 | 30-APR-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 41.58 | 212.78 |
| | 41366135 | 30-APR-10 | 5032A-MSI SOFTW | | 255.64 | 17.89 | 66.46 | 339.99 |
| | | | Sub Total | | 5873.31 | 36.22 | 1439.46 | 7348.99 |
| MAY-2010 | 21137071 | 22-MAY-10 | WYNREWARDS 5% | | 235.36 | 0.00 | 53.68 | 289.04 |
| | 1132640 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 1.04 | 5.39 |
| | 30441876 | 28-MAY-10 | NOV 2009 NT AUD | | 280.90 | 0.00 | 63.99 | 344.89 |
| | 30442325 | 28-MAY-10 | NOV 2009 NT AUD | | 213.49 | 0.00 | 48.67 | 262.16 |
| | 41391355 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 39.02 | 210.22 |
| | 41389187 | 31-MAY-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 62.35 | 335.94 |
| | 41391212 | 31-MAY-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 24.83 | 133.76 |
| | 41407275 | 31-MAY-10 | Actual-1000A-RO | | 2910.53 | 0.00 | 589.66 | 3500.19 |
| | 41406692 | 31-MAY-10 | Actual-1800A-RE | | 1338.84 | 0.00 | 271.21 | 1610.05 |
| | 41409155 | 31-MAY-10 | Actual-1210A-MA | | 873.16 | 0.00 | 176.87 | 1050.03 |

11/4/2011

Page 4 of 11

Report Date : 04-NOV-11

ITEMIZED STATEMENT
------------------

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| JUN-2010 | 30448350 | 04-JUN-10 | OTA Credit | | (132.19) | 0.00 | 0.00 | (132.19) |
| | 1139263 | 20-JUN-10 | GDS & INTERNET | | 4.35 | 0.00 | 0.97 | 5.32 |
| | 21139748 | 22-JUN-10 | WYNREWARDS 5% | | 135.59 | 0.00 | 28.78 | 164.37 |
| | 41449200 | 30-JUN-10 | Actual-1000A-RO | | 2179.74 | 0.00 | 463.25 | 2642.99 |
| | 41451283 | 30-JUN-10 | Actual-1800A-RE | | 1002.68 | 0.00 | 213.06 | 1215.74 |
| | 41432221 | 30-JUN-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 36.37 | 207.57 |
| | 41431474 | 30-JUN-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 23.14 | 132.07 |
| | 41450999 | 30-JUN-10 | Actual-1210A-MA | | 653.92 | 0.00 | 138.99 | 792.91 |
| | 41432213 | 30-JUN-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 58.11 | 331.70 |
| | | | | **Sub Total** | 6374.12 | 36.23 | 1331.32 | 7741.67 |
| JUL-2010 | TR0145860 | 18-JUL-10 | TMC / CONSORTIA | | 5.48 | 0.00 | 1.04 | 6.52 |
| | TMO145860 | 18-JUL-10 | MEMBER BENEFIT | | 14.39 | 0.00 | 2.83 | 17.22 |
| | 1145860 | 18-JUL-10 | GDS & INTERNET | | 20.40 | 0.00 | 4.07 | 24.47 |
| | TA0145860 | 18-JUL-10 | T/A COMMISSIONS | | 15.66 | 0.00 | 3.05 | 18.71 |
| | 21141440 | 22-JUL-10 | WYNREWARDS 5% | | 28.94 | 0.00 | 5.70 | 34.64 |
| | 41463002 | 31-JUL-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 33.71 | 204.91 |
| | 41473337 | 31-JUL-10 | Actual-1000A-RO | | 1909.73 | 0.00 | 376.23 | 2285.96 |
| | 41474267 | 31-JUL-10 | Actual-1210A-MA | | 572.92 | 0.00 | 112.85 | 685.77 |
| | 41474573 | 31-JUL-10 | Actual-1800A-RE | | 878.48 | 0.00 | 173.10 | 1051.58 |
| | | | | **Sub Total** | 3606.00 | 11.20 | 712.58 | 4329.78 |

11/4/2011

Page 5 of 11

Report Date : 04-NOV-11

Page 4 of 9

## ITEMIZED STATEMENT

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| AUG-2010 | 10488588 | 19-AUG-10 | GUEST SRVCS TRA | 160.00 | 0.00 | 29.12 | 189.12 |
|  | 10488587 | 19-AUG-10 | GUEST SATISFACT | 40.00 | 0.00 | 7.28 | 47.28 |
|  | 1152448 | 22-AUG-10 | GDS & INTERNET | 4.60 | 0.00 | 0.83 | 5.43 |
|  | 41516851 | 31-AUG-10 | Actual-1800A-RE | 709.03 | 0.00 | 129.07 | 838.10 |
|  | 41514918 | 31-AUG-10 | Actual-1000A-RO | 1541.38 | 0.00 | 280.52 | 1821.90 |
|  | 41516023 | 31-AUG-10 | Actual-1210A-MA | 462.41 | 0.00 | 84.19 | 546.60 |
|  | 41489595 | 31-AUG-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 31.15 | 202.35 |
|  | Sub Total |  |  | 3077.42 | 11.20 | 562.16 | 3650.78 |
| SEP-2010 | 10494043 | 02-SEP-10 | GUEST SATISFACT | 25.00 | 0.00 | 4.59 | 29.59 |
|  | 10494001 | 02-SEP-10 | GUEST SRVCS TRA | 160.00 | 0.00 | 29.12 | 189.12 |
|  | 21147701 | 22-SEP-10 | WYNREWARDS 5% | 7.25 | 0.00 | 1.20 | 8.45 |
|  | 41548989 | 30-SEP-10 | Actual-1210A-MA | 446.01 | 0.00 | 74.24 | 520.25 |
|  | 41549613 | 30-SEP-10 | Actual-1800A-RE | 683.88 | 0.00 | 113.87 | 797.75 |
|  | 41531259 | 30-SEP-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 28.49 | 199.69 |
|  | 41547191 | 30-SEP-10 | Actual-1000A-RO | 1486.70 | 0.00 | 247.51 | 1734.21 |
|  | Sub Total |  |  | 2968.84 | 11.20 | 499.02 | 3479.06 |
| OCT-2010 | 41572254 | 31-OCT-10 | Actual-1800A-RE | 834.75 | 0.00 | 134.13 | 968.88 |
|  | 41564089 | 31-OCT-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 25.93 | 197.13 |

Page 6 of 11

| Invoice No | Invoice Date | Description | Billing | Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|
| 41570635 | 31-OCT-10 | Actual-1000A-RO | 1814.67 | 0.00 | 291.60 | 2106.27 |
| 41572201 | 31-OCT-10 | Actual-1210A-MA | 544.40 | 0.00 | 87.49 | 631.89 |
| | | Sub Total | 3353.82 | 11.20 | 539.15 | 3904.17 |
| **NOV-2010** | | | | | | |
| 21154647 | 22-NOV-10 | WYNREWARDS 5% | 11.50 | 0.00 | 1.56 | 13.06 |
| 41613776 | 30-NOV-10 | Actual-1800A-RE | 945.34 | 0.00 | 126.77 | 1072.11 |
| 41612909 | 30-NOV-10 | Actual-1210A-MA | 616.53 | 0.00 | 82.71 | 699.24 |
| 41587823 | 30-NOV-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 23.28 | 194.48 |
| 41613975 | 30-NOV-10 | Actual-1000A-RO | 2055.09 | 0.00 | 275.61 | 2330.70 |
| | | Sub Total | 3788.46 | 11.20 | 509.93 | 4309.59 |
| **DEC-2010** | | | | | | |
| 21156381 | 22-DEC-10 | WYNREWARDS 5% | 2.25 | 0.00 | 0.24 | 2.49 |
| 41640626 | 31-DEC-10 | Actual-1800A-RE | 928.36 | 0.00 | 113.21 | 1041.57 |

Page 5 of 9

ITEMIZED STATEMENT
------------------

Report Date : 04-NOV-11

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| 41639071 | 31-DEC-10 | Actual-1000A-RO | | 2018.18 | 0.00 | 246.06 | 2264.24 |
| 41640215 | 31-DEC-10 | Actual-1210A-MA | | 605.45 | 0.00 | 73.80 | 679.25 |
| 41624650 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 20.62 | 191.82 |
| | | Sub Total | | 3714.24 | 11.20 | 453.93 | 4179.37 |

11/4/2011

Page 7 of 11

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **JAN-2011** | 21160292 | 22-JAN-11 | WYNREWARDS 5% | 3.00 | 0.00 | 0.38 | 3.38 |
| | 41674454 | 31-JAN-11 | Actual-1800A-RE | 969.48 | 0.00 | 111.57 | 1081.05 |
| | 41660151 | 31-JAN-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 19.42 | 190.62 |
| | 41677351 | 31-JAN-11 | Actual-1000A-RO | 2107.57 | 0.00 | 242.53 | 2350.10 |
| | 41675518 | 31-JAN-11 | Actual-1210A-MA | 632.27 | 0.00 | 72.75 | 705.02 |
| | | | **Sub Total** | 3872.32 | 11.20 | 446.65 | 4330.17 |
| **FEB-2011** | 30541558 | 14-FEB-11 | SUMMIT 2011 FEE | 599.00 | 0.00 | 63.80 | 662.80 |
| | 41705791 | 28-FEB-11 | Actual-1800A-RE | 1303.03 | 0.00 | 129.67 | 1432.70 |
| | 41693482 | 28-FEB-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 17.03 | 188.23 |
| | 41704713 | 28-FEB-11 | Actual-1210A-MA | 849.80 | 0.00 | 84.56 | 934.36 |
| | 41706428 | 28-FEB-11 | Actual-1000A-RO | 2832.67 | 0.00 | 281.86 | 3114.53 |
| | | | **Sub Total** | 5744.50 | 11.20 | 576.92 | 6332.62 |
| **MAR-2011** | 10530399 | 24-MAR-11 | GUEST SATISFACT | 65.00 | 0.00 | 5.71 | 70.71 |
| | 10530397 | 24-MAR-11 | GUEST SRVCS TRA | 160.00 | 0.00 | 14.00 | 174.00 |
| | 41740222 | 31-MAR-11 | Actual-1210A-MA | 975.26 | 0.00 | 81.93 | 1057.19 |
| | 41740072 | 31-MAR-11 | Actual-1000A-RO | 3250.86 | 0.00 | 273.07 | 3523.93 |
| | 41738460 | 31-MAR-11 | Actual-1800A-RE | 1495.40 | 0.00 | 125.62 | 1621.02 |
| | 41726403 | 31-MAR-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 14.37 | 185.57 |
| | | | **Sub Total** | 6106.52 | 11.20 | 514.70 | 6632.42 |

Page 6 of 9

Report Date : 04-NOV-11

ITEMIZED STATEMENT
-----------------

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 04-NOV-2011

Page 8 of 11

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| APR-2011 | 2116345 | 22-APR-11 | WYNREWARDS 5% | | 17.98 | 0.00 | 1.32 | 19.30 |
| | 10538095 | 28-APR-11 | GUEST SATISFACT | | 90.00 | 0.00 | 6.31 | 96.31 |
| | 10538093 | 28-APR-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 11.20 | 171.20 |
| | 41770555 | 30-APR-11 | Actual-1800A-RE | | 1338.84 | 0.00 | 92.37 | 1431.21 |
| | 41756555 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 11.81 | 183.01 |
| | 41770231 | 30-APR-11 | Actual-1210A-MA | | 873.16 | 0.00 | 60.25 | 933.41 |
| | 41755878 | 30-APR-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 6.81 | 105.21 |
| | 41772062 | 30-APR-11 | Actual-1000A-RO | | 2910.53 | 0.00 | 200.82 | 3111.35 |
| | | | Sub Total | | 5648.91 | 11.20 | 390.89 | 6051.00 |
| MAY-2011 | 21170554 | 22-MAY-11 | WYNREWARDS 5% | | 2.50 | 0.00 | 0.15 | 2.65 |
| | 41787154 | 31-MAY-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 9.15 | 180.35 |
| | 41785248 | 31-MAY-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 5.28 | 103.68 |
| | 41802630 | 31-MAY-11 | Actual-1800A-RE | | 979.11 | 0.00 | 52.39 | 1031.50 |
| | 41801659 | 31-MAY-11 | Actual-1210A-MA | | 638.55 | 0.00 | 34.17 | 672.72 |
| | 41802888 | 31-MAY-11 | Actual-1000A-RO | | 2128.50 | 0.00 | 113.87 | 2242.37 |
| | | | Sub Total | | 4007.06 | 11.20 | 215.01 | 4233.27 |
| JUN-2011 | 21173882 | 22-JUN-11 | WYNREWARDS 5% | | 16.45 | 0.00 | 0.70 | 17.15 |
| | 41833099 | 30-JUN-11 | Actual-1800A-RE | | 1068.24 | 0.00 | 41.13 | 1109.37 |
| | 41815247 | 30-JUN-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 6.59 | 177.79 |
| | 41813634 | 30-JUN-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 3.80 | 102.20 |
| | 41830799 | 30-JUN-11 | Actual-1210A-MA | | 696.68 | 0.00 | 26.82 | 723.50 |
| | 41831204 | 30-JUN-11 | Actual-1000A-RO | | 2322.27 | 0.00 | 89.41 | 2411.68 |
| | | | Sub Total | | 4362.04 | 11.20 | 168.45 | 4541.69 |
| JUL-2011 | 30603633 | 18-JUL-11 | PM SYSTEM TRAIN | | (1175.00) | 0.00 | 0.00 | (1175.00) |
| | 30606371 | 31-JUL-11 | HughesNet VPN | | 105.00 | 7.35 | 2.59 | 114.94 |
| | 41867354 | 31-JUL-11 | Accrual-1000A-R | * | 1952.50 | 0.00 | 44.91 | 1997.41 |
| | 41866499 | 31-JUL-11 | Accrual-1210A-M | * | 585.75 | 0.00 | 13.48 | 599.23 |

11/4/2011

Page 9 of 11·

Report Date : 04-NOV-11

ITEMIZED STATEMENT

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 04-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41849275 | 31-JUL-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 2.27 | 100.67 |
| | 41865436 | 31-JUL-11 | Accrual-1800A-R | * | 898.15 | 0.00 | 20.66 | 918.81 |
| | | | Sub Total | | 2464.80 | 7.35 | 83.91 | 2556.06 |
| AUG-2011 | 21180343 | 22-AUG-11 | WYNREWARDS 5% | | 179.13 | 0.00 | 2.15 | 181.28 |
| | 41883658 | 31-AUG-11 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 3.84 | 515.80 |
| | 41897315 | 31-AUG-11 | Accrual-1800A-R | * | 770.55 | 0.00 | 5.78 | 776.33 |
| | 30612632 | 31-AUG-11 | HughesNet VPN | | 105.00 | 7.35 | 0.84 | 113.19 |
| | 41898953 | 31-AUG-11 | Accrual-1210A-M | * | 502.53 | 0.00 | 3.77 | 506.30 |
| | 41896488 | 31-AUG-11 | Accrual-1000A-R | * | 1675.10 | 0.00 | 12.56 | 1687.66 |
| | | | Sub Total | | 3710.78 | 40.84 | 28.94 | 3780.56 |
| SEP-2011 | 30617241 | 13-SEP-11 | 2012 ALLIANCE D | | 1107.00 | 0.00 | 0.00 | 1107.00 |
| | 30619139 | 15-SEP-11 | ONLINE LRNG LIB | | 50.00 | 0.00 | 0.00 | 50.00 |
| | 21182951 | 22-SEP-11 | WYNREWARDS 5% | | 129.62 | 0.00 | 0.00 | 129.62 |
| | 30627449 | 28-SEP-11 | GLOBAL CONFEREN | | 999.00 | 0.00 | 0.00 | 999.00 |
| | 30633329 | 30-SEP-11 | HughesNet VPN | | 105.00 | 7.35 | 0.00 | 112.35 |
| | 41927063 | 30-SEP-11 | Accrual-1800A-R | * | 680.62 | 0.00 | 0.00 | 680.62 |
| | 41925928 | 30-SEP-11 | Accrual-I210A-M | * | 443.88 | 0.00 | 0.00 | 443.88 |
| | 41914826 | 30-SEP-11 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 0.00 | 511.96 |
| | 41925396 | 30-SEP-11 | Accrual-1000A-R | * | 1479.60 | 0.00 | 0.00 | 1479.60 |
| | | | Sub Total | | 5673.19 | 40.84 | 0.00 | 5514.03 |

11/4/2011

Page 10 of 11.

```
OCT-2011   21185398      22-OCT-11   WYNREWARDS 5%                        181.05        0.00     181.05
           41938243      31-OCT-11   5096A-SOFTHOTEL          478.47      33.49        0.00     511.96
           41962526      31-OCT-11   Accrual-1000A-R  *     1574.80        0.00        0.00    1574.80
           41963165      31-OCT-11   Accrual-1210A-M  *      472.44        0.00        0.00     472.44
           41964140      31-OCT-11   Accrual-1800A-R  *      724.41        0.00        0.00     724.41
           41936501      31-OCT-11   5718A-HughesNet         105.00        7.35        0.00     112.35
```

Page 8 of 9

Report Date : 04-NOV-11

ITEMIZED STATEMENT
-----------------

Customer No :  02554-87760-03-DAY
Address :      551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:    04-NOV-2011

```
                                                                        Amount
Mon-Year  Invoice No  Invoice Date  Description  Accrued   Billing       Tax    FinanceCharges    Total
--------  ----------  ------------  -----------  -------   -------       ------ --------------    -----

                                       Sub Total            3536.17      40.84        0.00        3577.01

                                       Grand Total        101743.66     481.64     14787.30     117012.60
```

Requested By: Yelena Danishevsky

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

11/4/2011

Page 9 of 9

UPS CampusShip: Shipment Receipt

Page 1 of 1

## Shipment Receipt

Transaction Date:                                          09 Nov 2011
Tracking Number:                    /                      1Z22445X0297661190

### 1  Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Anjani, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Amrat Anand | Elena Danishevsky | Elena Danishevsky |
| Days Inn | 22 Sylvan Way | 22 Sylvan Way |
| 2739 North Florida Avenue | Parsippany NJ 07054 | Parsippany NJ 07054 |
| TAMPA FL 336021521 | Telephone:973-753-7236 | Telephone:973-753-7236 |
| Telephone:(813) 626-3612 | | |

### 2  Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-5072 |

### 3  UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air
**Guaranteed By:**
End of Day Friday, 11/11/11
**Shipping Fees Subtotal:**       14.42 USD
  Transportation                  12.65 USD
  Fuel Surcharge                   1.77 USD

### 4  Payment Information

Bill Shipping Charges to:            Shipper's Account 22445X

A discount has been applied to the Daily rates for this shipment

Total Charged:                                                          14.42 USD
Negotiated Total:                                                        5.45 USD

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

Page 1 of 1

## Shipment Receipt

Transaction Date:                                       09 Nov 2011
Tracking Number:                                       1Z22445X0297745804

### 1  Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Commercial Capital Corporation | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Commercial Capital Corporation | Elena Danishevsky | Elena Danishevsky |
| 25 West 43rd Street | 22 Sylvan Way | 22 Sylvan Way |
| Suite 900 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| NEW YORK NY 100367414 | Telephone:973-753-7236 | Telephone:973-753-7236 |

### 2  Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1.  Letter | UPS Letter | | Reference # 1 - 006-5072 |

### 3  UPS Shipping Service and Shipping Options

Service:
UPS 2nd Day Air
Shipping Fees Subtotal:        12.03 USD
   Transportation              10.55 USD
   Fuel Surcharge               1.48 USD

### 4  Payment Information

Bill Shipping Charges to:            Shipper's Account 22445X

A discount has been applied to the Daily rates for this shipment

Total Charged:                                          12.03 USD
Negotiated Total:                                        5.45 USD

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-
UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT F



# WYNDHAM

### HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

March 15, 2012

**VIA OVERNIGHT DELIVERY**

Mr. Amrat M. Anand
ANJANI, INC.
2739 North Florida Avenue
Tampa, FL 33602

RE:   **NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO DAYS®
UNIT #02554-87760-3 LOCATED IN WILDWOOD, FL (THE "FACILITY")**

Dear Mr. Anand:

I write on behalf of DAYS INNS WORLDWIDE, INC. ("we," "us," or "our") regarding the License Agreement dated April 20, 1999 between ANJANI, INC. ("you" or "your") and us (the "Agreement"). You will recall that, on November 9, 2011, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within 10 days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement (including your License to operate the Facility as a Days facility) immediately upon written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of ten (10) days from the date of this letter to cure your default. Please be advised that as of March 15, 2012 your account is now past due in the amount of **$142,219.38**. We have enclosed an itemized statement detailing the fees past due. Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period. We are simply giving you a final opportunity to avoid termination. By copy of this letter, we are also informing your guarantors of your default as well any lender with which we have an agreement regarding the Facility.

# WYNDHAM

### HOTEL GROUP



















We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 443-3009.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:    Jitendra Patel (Guarantor)
       Narendra Bhatt (Guarantor)
       Commercial Capital Corporation (Lender)
       Clyde Guinn
       Mona Christian
       Valerie Capers Workman

Page 1 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT

```
As of Date (DD-MMM-YYYY) :  15-MAR-2012
Customer No                :  02554-87760-03-DAY
Category Set
Category Group
Group No
Bankruptcy                 :  No Bankruptcy Sites
Disputed                   :  No
Finance Charges Included:     Yes
```

Page 1 of 10

ITEMIZED STATEMENT

Report Date : 15-MAR-12

```
Customer No :  02554-87760-03-DAY
Address     :  551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:    15-MAR-2012
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | Finance Charges | Total |
|----------|-----------|--------------|-------------|-----------------|------------|-----------------|-------|
| DEC-2009 | 41242364 | 31-DEC-09 | Actual-1800A-RE | 965.37 | 0.00 | 257.93 | 1223.30 |
|          | 41241412 | 31-DEC-09 | Actual-1210A-MA | 433.68 | 0.00 | 90.50 | 524.18 |
|          |          |              | Sub Total | 1399.05 | 0.00 | 348.43 | 1747.48 |
| JAN-2010 | 21124549 | 22-JAN-10 | WYNREWARDS 5% | 190.50 | 0.00 | 66.76 | 257.26 |

3/15/2012

Page 2 of 12

| 41273110 | 31-JAN-10 | Actual-1800A-RE | 1157.81 | 0.00 | 405.89 | 1563.70 |
| 41254715 | 31-JAN-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 95.85 | 369.44 |
| 41255848 | 31-JAN-10 | 506A-DIRECWAY | 160.00 | 11.20 | 59.98 | 231.18 |
| 41272654 | 31-JAN-10 | Actual-1210A-MA | 755.10 | 0.00 | 264.64 | 1019.74 |
| 41272349 | 31-JAN-10 | Actual-1000A-RO | 2516.98 | 0.00 | 882.12 | 3399.10 |
| 41255195 | 31-JAN-10 | 5052A-HARDWARE | 101.80 | 7.13 | 38.17 | 147.10 |
| | | Sub Total | 5137.88 | 36.23 | 1811.41 | 6987.52 |
| FEB-2010 | | | | | | |
| 21128380 | 22-FEB-10 | WYNREWARDS 5% | 286.08 | 0.00 | 95.78 | 381.86 |
| 41281991 | 28-FEB-10 | 5052A-HARDWARE | 101.80 | 7.13 | 36.49 | 145.42 |
| 41282442 | 28-FEB-10 | 506A-DIRECWAY | 160.00 | 11.20 | 57.32 | 228.52 |
| 41312838 | 28-FEB-10 | Actual-1000A-RO | 2832.95 | 0.00 | 949.00 | 3781.95 |
| 41313691 | 28-FEB-10 | Actual-1800A-RE | 1303.16 | 0.00 | 436.59 | 1739.75 |
| 41310651 | 28-FEB-10 | Actual-1210A-MA | 849.89 | 0.00 | 284.68 | 1134.57 |
| 41283217 | 28-FEB-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 91.62 | 365.21 |
| | | Sub Total | 5789.57 | 36.23 | 1951.48 | 7777.28 |
| MAR-2010 | | | | | | |
| TA0112381 | 03-MAR-10 | T/A COMMISSIONS | 11.55 | 0.00 | 3.86 | 15.41 |
| 1112381 | 03-MAR-10 | GDS & INTERNET | 5.43 | 0.00 | 3.57 | 9.00 |
| 10449314 | 10-MAR-10 | GUEST SRVCS TRA | 100.00 | 0.00 | 33.50 | 133.50 |
| 10449916 | 10-MAR-10 | GUEST SATISFACT | 70.80 | 0.00 | 23.74 | 94.54 |
| 30415671 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 320.16 | 1319.16 |
| 21130718 | 22-MAR-10 | WYNREWARDS 5% | 296.09 | 0.00 | 94.75 | 390.84 |
| 118870 | 29-MAR-10 | GDS & INTERNET | 14.05 | 0.00 | 4.52 | 18.57 |
| 41331168 | 31-MAR-10 | 5032A-MSI SOFTW | 255.69 | 17.90 | 87.51 | 361.10 |

Page 2 of 10

ITEMIZED STATEMENT
------------------

Report Date : 15-MAR-12

Customer No : 02554-87760-03-DAY
Address : 55: EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 15-MAR-2012

3/15/2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41328594 | 31-MAR-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 54.76 | 225.96 |
| | 41346213 | 31-MAR-10 | Actual-1000A-RO | | 3044.70 | 0.00 | 974.27 | 4018.97 |
| | 41347479 | 31-MAR-10 | Actual-1800A-RE | | 1400.56 | 0.00 | 448.21 | 1848.77 |
| | 41348219 | 31-MAR-10 | Actual-1210A-MA | | 913.41 | 0.00 | 292.31 | 1205.72 |
| | 41329127 | 31-MAR-10 | 5052A-HARDWAIE | | 101.80 | 7.13 | 34.85 | 143.78 |
| | | | Sub Total | | 7373.08 | 36.23 | 2376.01 | 9785.32 |
| APR-2010 | 30422459 | 05-APR-10 | OCT 2009 NT AUD | | 99.71 | 0.00 | 32.00 | 131.71 |
| | 30422340 | 05-APR-10 | OCT 2009 NT AUD | | 75.78 | 0.00 | 24.22 | 100.00 |
| | 30426704 | 14-APR-10 | ONLINE LRNG LIB | | 50.00 | 0.00 | 16.06 | 66.06 |
| | 1125494 | 18-APR-10 | GDS & INTERNET | | 8.70 | 0.00 | 2.59 | 11.29 |
| | 21136678 | 22-APR-10 | WYNREWARDS 5% | | 176.24 | 0.00 | 53.63 | 229.87 |
| | 41376684 | 30-APR-10 | Actual-1000A-RO | | 2809.91 | 0.00 | 855.58 | 3665.49 |
| | 41365374 | 30-APR-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 33.17 | 142.10 |
| | 41376109 | 30-APR-10 | Actual-1800A-RE | | 1292.56 | 0.00 | 393.54 | 1686.10 |
| | 41375959 | 30-APR-10 | Actual-1210A-MA | | 842.97 | 0.00 | 256.70 | 1099.67 |
| | 41364414 | 30-APR-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 52.10 | 223.30 |
| | 41366135 | 30-APR-10 | 5032A-MSI SOFTW | | 255.64 | 17.89 | 83.28 | 356.81 |
| | | | Sub Total | | 5873.31 | 36.22 | 1802.87 | 7712.40 |
| MAY-2010 | 21137071 | 22-MAY-10 | WYNREWARDS 5% | | 235.36 | 0.00 | 68.16 | 303.52 |
| | 1132640 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 1.32 | 5.67 |
| | 30441876 | 28-MAY-10 | NOV 2009 NT AUD | | 280.90 | 0.00 | 81.25 | 362.15 |
| | 30442325 | 28-MAY-10 | NOV 2009 NT AUD | | 213.49 | 0.00 | 61.80 | 275.29 |
| | 41391355 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 49.54 | 220.74 |
| | 41389187 | 31-MAY-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 79.17 | 352.76 |
| | 41391212 | 31-MAY-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 31.53 | 140.46 |
| | 41407275 | 31-MAY-10 | Actual-1000A-RO | | 2910.53 | 0.00 | 768.65 | 3679.18 |
| | 41406692 | 31-MAY-10 | Actual-1800A-RE | | 1338.84 | 0.00 | 353.54 | 1692.38 |
| | 41409155 | 31-MAY-10 | Actual-1210A-MA | | 873.16 | 0.00 | 230.56 | 1103.72 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=2045107991

3/15/2012

Page 4 of 12

Report Date : 15 MAR 12

ITEMIZED STATEMENT
---------------------

Customer No  :  02554-87760-03-DAY
Address :        551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date:     15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| JUN-2010 | 30448350 | 04-JUN-10 | OTA Credit | | (132.19) | 0.00 | 0.00 | (132.19) |
| | 1139263 | 20-JUN-10 | GDS & INTERNET | | 4.35 | 0.00 | 1.25 | 5.60 |
| | 22139748 | 22-JUN-10 | WYNREWARDS 5% | | 135.59 | 0.00 | 37.11 | 172.70 |
| | 41449200 | 30-JUN-10 | Actual-1000A-RO | | 2179.74 | 0.00 | 597.32 | 2777.06 |
| | 41451283 | 30-JUN-10 | Actual-1800A-RE | | 1002.68 | 0.00 | 274.72 | 1277.40 |
| | 41432221 | 30-JUN-10 | 506A-DIRECWAY | | 160.00 | 11.20 | 46.89 | 218.09 |
| | 41431474 | 30-JUN-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 29.84 | 138.77 |
| | 41450999 | 30-JUN-10 | Actual-1210A-MA | | 653.92 | 0.00 | 179.22 | 833.14 |
| | 41432213 | 30-JUN-10 | 5032A-MSI SOFTw | | 255.69 | 17.90 | 74.93 | 348.52 |
| | | | Sub Total | | 6374.12 | 36.23 | 1725.52 | 8135.87 |
| JUL-2010 | TR0145860 | 18-JUL-10 | TMC / CONSORTIA | | 5.48 | 0.00 | 1.36 | 6.84 |
| | TM0145860 | 18-JUL-10 | MEMBER BENEFIT | | 14.39 | 0.00 | 3.71 | 18.10 |
| | 1145860 | 18-JUL-10 | GDS & INTERNET | | 20.40 | 0.00 | 5.34 | 25.74 |
| | TA0145860 | 18-JUL-10 | T/A COMMISSIONS | | 15.66 | 0.00 | 4.00 | 19.66 |
| | 21141440 | 22-JUL-10 | WYNREWARDS 5% | | 28.94 | 0.00 | 7.48 | 36.42 |
| | 41463002 | 31-JUL-10 | 506A-DIRECWAY | | 160.00 | 11.20 | 44.23 | 215.43 |
| | 41473337 | 31-JUL-10 | Actual-1000A-RO | | 1909.73 | 0.00 | 493.68 | 2403.41 |
| | 41474267 | 31-JUL-10 | Actual-1210A-MA | | 572.92 | 0.00 | 148.08 | 721.00 |
| | 41474573 | 31-JUL-10 | Actual-1800A-RE | | 878.48 | 0.00 | 227.14 | 1105.62 |
| | | | Sub Total | | 3606.00 | 11.20 | 935.02 | 4552.22 |

```
AUG-2010
         10488588   19-AUG-10   GUEST SRVCS TRA      160.00    0.00     38.96    198.96
         10488587   19-AUG-10   GUEST SATISFACT       40.00    0.00      9.74     49.74
         1152448    22-AUG-10   GDS & INTERNET         4.60    0.00      1.11      5.71
         41516851   31-AUG-10   Actual-1800A-RE      709.03    0.00    172.68    881.71
         41514918   31-AUG-10   Actual-1000A-RO     1541.38    0.00    375.31   1916.69
         41516023   31-AUG-10   Actual-1210A-MA      462.41    0.00    112.64    575.05
```

Page 4 of 10

ITEMIZED STATEMENT
-----------------

Customer No :  02554-87760-03-DAY
Address :      551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date:    15-MAR-2012

Report Date : 15-MAR-12

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Tax Amount | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 41489595 | 31-AUG-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 41.67 | 212.87 |
| | | | Sub Total | 3077.42 | 11.20 | 752.11 | 3840.73 |
| SEP-2010 | 10494043 | 02-SEP-10 | GUEST SATISFACT | 25.00 | 0.00 | 6.14 | 31.14 |
| | 10494001 | 02-SEP-10 | GUEST SRVCS TRA | 160.00 | 0.00 | 38.96 | 198.96 |
| | 21147701 | 22-SEP-10 | WYNREWARDS 5% | 7.25 | 0.00 | 1.64 | 8.89 |
| | 41548989 | 30-SEP-10 | Actual-1210A-MA | 446.01 | 0.00 | 101.66 | 547.67 |
| | 41549613 | 30-SEP-10 | Actual-1800A-RE | 683.88 | 0.00 | 155.93 | 839.81 |
| | 41531259 | 30-SEP-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 39.01 | 210.21 |
| | 41547191 | 30-SEP-10 | Actual-1000A-RO | 1486.70 | 0.00 | 338.93 | 1825.63 |
| | | | Sub Total | 2968.84 | 11.20 | 682.27 | 3662.31 |
| OCT-2010 | 41572254 | 31-OCT-10 | Actual-1800A-RE | 834.75 | 0.00 | 185.47 | 1020.22 |
| | 41564089 | 31-OCT-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 36.45 | 207.65 |

Page 6 of 12

|  | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41570635 | 31-OCT-10 | Actual-1000A-RO | 1814.67 | 0.00 | 403.21 | 2217.88 |
| 41572201 | 31-OCT-10 | Actual-1210A-MA | 544.40 | 0.00 | 120.98 | 665.38 |
| | | Sub Total | 3353.82 | 11.20 | 746.11 | 4111.13 |
| NOV-2010 21154647 | 22-NOV-10 | WYNREWARDS 5% | 11.50 | 0.00 | 2.27 | 13.77 |
| 41613776 | 30-NOV-10 | Actual-1800A-RE | 945.34 | 0.00 | 184.90 | 1130.24 |
| 41612909 | 30-NOV-10 | Actual-1210A-MA | 616.53 | 0.00 | 120.64 | 737.17 |
| 41587823 | 30-NOV-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 33.80 | 205.00 |
| 41613975 | 30-NOV-10 | Actual-1000A-RO | 2055.09 | 0.00 | 401.99 | 2457.08 |
| | | Sub Total | 3788.46 | 11.20 | 743.60 | 4543.26 |
| DEC-2010 21156381 | 22-DEC-10 | WYNREWARDS 5% | 2.25 | 0.00 | 0.36 | 2.61 |
| 41640626 | 31-DEC-10 | Actual-1800A-RE | 928.36 | 0.00 | 170.31 | 1098.67 |

Page 5 of 10

ITEMIZED STATEMENT
------------------

Report Date : 15-MAR-12

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41639071 | 31-DEC-10 | Actual-1000A-RO | | 2018.18 | 0.00 | 370.17 | 2388.35 |
| | 41640215 | 31-DEC-10 | Actual-1210A-MA | | 605.45 | 0.00 | 111.02 | 716.47 |
| | 41624650 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 31.14 | 202.34 |
| | | | Sub Total | | 3714.24 | 11.20 | 683.00 | 4408.44 |

| | Account No | Date | Description | | | | |
|---|---|---|---|---|---|---|---|
| JAN-2011 | 21160292 | 22-JAN-11 | WYNREWARDS 5% | 3.00 | 0.00 | 0.58 | 3.58 |
| | 41660151 | 31-JAN-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 29.94 | 201.14 |
| | 41677351 | 31-JAN-11 | Actual-1000A-RO | 2107.57 | 0.00 | 372.15 | 2479.72 |
| | 41674454 | 31-JAN-11 | Actual-1800A-RE | 969.48 | 0.00 | 171.20 | 1140.68 |
| | 41675518 | 31-JAN-11 | Actual-1210A-MA | 632.27 | 0.00 | 111.63 | 743.90 |
| | | | Sub Total | 3872.32 | 11.20 | 685.50 | 4569.02 |
| FEB-2011 | 30541558 | 14-FEB-11 | SUMMIT 2011 FEE | 599.00 | 0.00 | 100.63 | 699.63 |
| | 41706428 | 28-FEB-11 | Actual-1000A-RO | 2832.67 | 0.00 | 456.08 | 3288.75 |
| | 41693482 | 28-FEB-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 27.55 | 198.75 |
| | 41705791 | 28-FEB-11 | Actual-1800A-RE | 1303.03 | 0.00 | 209.82 | 1512.85 |
| | 41704713 | 28-FEB-11 | Actual-1210A-MA | 849.80 | 0.00 | 136.82 | 986.62 |
| | | | Sub Total | 5744.50 | 11.20 | 930.90 | 6686.60 |
| MAR-2011 | 10530399 | 24-MAR-11 | GUEST SATISFACT | 65.00 | 0.00 | 9.72 | 74.72 |
| | 10530397 | 24-MAR-11 | GUEST SRVCS TRA | 160.00 | 0.00 | 23.84 | 183.84 |
| | 41726403 | 31-MAR-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 24.89 | 196.09 |
| | 41740222 | 31-MAR-11 | Actual-1210A-MA | 975.26 | 0.00 | 141.92 | 1117.18 |
| | 41740072 | 31-MAR-11 | Actual-1000A-RO | 3250.86 | 0.00 | 473.00 | 3723.86 |
| | 41738460 | 31-MAR-11 | Actual-1800A-RE | 1495.40 | 0.00 | 217.59 | 1712.99 |
| | | | Sub Total | 6106.52 | 11.20 | 890.96 | 7008.68 |

Page 6 of 10

ITEMIZED STATEMENT
-------------------

Report Date : 15-MAR-12

Customer No : 02554-87760-03-DAY
Address :     551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:   15-MAR-2012

Page 8 of 12

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| APR-2011 | 21167345 | 22-APR-11 | WYNREWARDS 5% | | 17.98 | 0.00 | 2.43 | 20.41 |
| | 10538095 | 28-APR-11 | GUEST SATISFACT | | 90.00 | 0.00 | 11.86 | 101.86 |
| | 10538093 | 28-APR-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 21.04 | 181.04 |
| | 41770231 | 30-APR-11 | Actual-1210A-MA | | 873.16 | 0.00 | 113.94 | 987.10 |
| | 41772062 | 30-APR-11 | Actua1-1000A-RO | | 2910.53 | 0.00 | 379.81 | 3290.34 |
| | 41755878 | 30-APR-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 12.88 | 111.28 |
| | 41756555 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 22.33 | 193.53 |
| | 41705055 | 30-APR-11 | Actual-1800A-RE | | 1338.84 | 0.00 | 174.70 | 1513.54 |
| | | | Sub Total | | 5648.91 | 11.20 | 738.99 | 6399.10 |
| MAY-2011 | 21170554 | 22-MAY-11 | WYNREWARDS 5% | | 2.50 | 0.00 | 0.31 | 2.81 |
| | 41787154 | 31-MAY-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 19.67 | 190.87 |
| | 41785248 | 31-MAY-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 11.35 | 109.75 |
| | 41801659 | 31-MAY-11 | Actual-1210A-MA | | 638.55 | 0.00 | 73.45 | 712.00 |
| | 41802888 | 31-MAY-11 | Actual-1000A-RO | | 2128.55 | 0.00 | 244.77 | 2373.27 |
| | 41802630 | 31-MAY-11 | Actual-1800A-RE | | 979.11 | 0.00 | 112.62 | 1091.73 |
| | | | Sub Total | | 4007.06 | 11.20 | 462.17 | 4480.43 |
| JUN-2011 | 21173882 | 22-JUN-11 | WYNREWARDS 5% | | 16.45 | 0.00 | 1.70 | 18.15 |
| | 41833099 | 30-JUN-11 | Actual-1800A-RE | | 1068.24 | 0.00 | 106.83 | 1175.07 |
| | 41830799 | 30-JUN-11 | Actual-1210A-MA | | 696.68 | 0.00 | 69.67 | 766.35 |
| | 41815247 | 30-JUN-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 17.11 | 188.31 |
| | 41836134 | 30-JUN-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 9.87 | 108.27 |
| | 41831204 | 30-JUN-11 | Actual-1000A-RO | | 2322.27 | 0.00 | 232.24 | 2554.51 |
| | | | Sub Total | | 4362.04 | 11.20 | 437.42 | 4810.66 |
| JUL-2011 | 30603633 | 18-JUL-11 | PM SYSTEM TRAIN | | (1175.00) | 0.00 | 0.00 | (1175.00) |
| | 41866499 | 31-JUL-11 | Accrual-1210A-M | * | 585.75 | 0.00 | 49.51 | 635.26 |
| | 41849275 | 31-JUL-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 8.34 | 106.74 |
| | 41867354 | 31-JUL-11 | Accrual-1000A-R | * | 1952.50 | 0.00 | 164.98 | 2117.48 |

Page 7 of 10

3/15/2012

Page 9 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-----------------

Customer No  :  02554-87760-03-DAY
Address :        551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:     15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|------|-------|
|          | 30606371  | 31-JUL-11    | HughesNet VPN |       | 105.00  | 7.35 | 9.50  | 121.85 |
|          | 41865436  | 31-JUL-11    | Accrual-1800A-R | *   | 898.15  | 0.00 | 75.89 | 974.04 |
|          |           |              | Sub Total   |         | 2464.80 | 7.35 | 308.22 | 2780.37 |
| AUG-2011 | 21180343  | 22-AUG-11    | WYNREWARDS 5% |       | 179.13  | 0.00 | 13.18 | 192.31 |
|          | 41896488  | 31-AUG-11    | Actual-1000A-RO |     | 1651.45 | 0.00 | 115.57 | 1767.02 |
|          | 30612632  | 31-AUG-11    | HughesNet VPN |       | 105.00  | 7.35 | 7.75  | 120.10 |
|          | 41883658  | 31-AUG-11    | 5096A-SOFTHOTEL |     | 478.47  | 33.49 | 35.34 | 547.30 |
|          | 41897315  | 31-AUG-11    | Actual-1800A-RE |     | 759.67  | 0.00 | 53.16 | 812.83 |
|          | 41898953  | 31-AUG-11    | Actual-1210A-MA |     | 495.43  | 0.00 | 34.68 | 530.11 |
|          |           |              | Sub Total   |         | 3669.15 | 40.84 | 259.68 | 3969.67 |
| SEP-2011 | 30619139  | 15-SEP-11    | ONLINE LRNG LIB |     | 50.00   | 0.00 | 3.09  | 53.09 |
|          | 21182951  | 22-SEP-11    | WYNREWARDS 5% |       | 129.62  | 0.00 | 7.52  | 137.14 |
|          | 30627449  | 28-SEP-11    | GLOBAL CONFEREN |     | 999.00  | 0.00 | 0.00  | 999.00 |
|          | 41927063  | 30-SEP-11    | Actual-1800A-RE |     | 676.34  | 0.00 | 36.75 | 713.09 |
|          | 30633329  | 30-SEP-11    | HughesNet VPN |       | 105.00  | 7.35 | 6.07  | 118.42 |
|          | 41925396  | 30-SEP-11    | Actual-1000A-RO |     | 1470.30 | 0.00 | 79.89 | 1550.19 |
|          | 41914826  | 30-SEP-11    | 5096A-SOFTHOTEL |     | 478.47  | 33.49 | 27.66 | 539.62 |
|          | 41925928  | 30-SEP-11    | Actual-1210A-MA |     | 441.09  | 0.00 | 23.97 | 465.06 |
|          |           |              | Sub Total   |         | 4349.82 | 40.84 | 184.95 | 4575.61 |
| OCT-2011 | 21185398  | 22-OCT-11    | WYNREWARDS 5% |       | 181.05  | 0.00 | 7.79  | 188.84 |

3/15/2012

| | | | | | | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| 41936501 | 31-OCT-11 | 5718A-HughesNet | | | | 105.00 | 7.35 | 4.32 | 116.67 |
| 41938243 | 31-OCT-11 | 5096A-SOFTHOTEL | | | | 478.47 | 33.49 | 19.72 | 531.68 |
| 41962526 | 31-OCT-11 | Actual-1000A-RO | | | | 1575.20 | 0.00 | 60.63 | 1635.83 |
| 41963165 | 31-OCT-11 | Actual-1210A-MA | | | | 472.56 | 0.00 | 18.18 | 490.74 |
| 41964140 | 31-OCT-11 | Actual-1800A-RE | | | | 724.59 | 0.00 | 27.89 | 752.48 |
| | | Sub Total | | 3536.87 | | 40.84 | 138.53 | 3716.24 |

Page 8 of 10

ITEMIZED STATEMENT
--------------------

Report Date : 15-MAR-12

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| NOV-2011 | 21188723 | 22-NOV-11 | WYNREWARDS 5% | | 346.24 | 0.00 | 9.52 | 355.76 |
| | 41987710 | 30-NOV-11 | Actual-1800A-RE | | 771.07 | 0.00 | 18.12 | 789.19 |
| | 41988469 | 30-NOV-11 | Actual-1000A-RO | | 1676.25 | 0.00 | 39.39 | 1715.64 |
| | 41989712 | 30-NOV-11 | Actual-1210A-MA | | 502.87 | 0.00 | 11.81 | 514.68 |
| | 41970293 | 30-NOV-11 | 5718A-HughesNet | | 105.00 | 7.35 | 2.64 | 114.99 |
| | 41970694 | 30-NOV-11 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 12.04 | 524.00 |
| | | | Sub Total | | 3879.90 | 40.84 | 93.52 | 4014.26 |
| DEC-2011 | 10584683 | 08-DEC-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 3.12 | 163.12 |
| | 10584682 | 08-DEC-11 | GUEST SATISFACT | | 45.00 | 0.00 | 0.88 | 45.88 |
| | 21191524 | 22-DEC-11 | WYNREWARDS 5% | | 377.04 | 0.00 | 4.71 | 381.75 |
| | 42027714 | 31-DEC-11 | Actual-1800A-RE | | 786.99 | 0.00 | 6.30 | 793.29 |

Report Date : 15-MAR-12

| Invoice No | Date | Description | Billing | Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|
| 42026141 | 31-DEC-11 | Actual-1000A-RO | 1710.85 | 0.00 | 13.69 | 1724.54 |
| 42006697 | 31-DEC-11 | 5718A-HughesNet | 105.00 | 7.35 | 0.90 | 113.25 |
| 42010055 | 31-DEC-11 | 5096A-SOFTHOTEL | 478.47 | 33.49 | 4.10 | 516.06 |
| 42027270 | 31-DEC-11 | Actual-1210A-MA | 513.25 | 0.00 | 4.11 | 517.36 |
| | | Sub Total | 4176.60 | 40.84 | 37.81 | 4255.25 |

| Mon-Year | Invoice No | Date | Description | Billing | Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| JAN-2012 | 10587698 | 04-JAN-12 | GUEST SATISFACT | 54.67 | 0.00 | 0.33 | 55.00 |
| | 10587699 | 04-JAN-12 | GUEST SRVCS TRA | 160.00 | 0.00 | 0.96 | 160.96 |
| | 21193734 | 22-JAN-12 | WYNREWARDS 5% | 350.65 | 0.00 | 0.00 | 350.65 |
| | 42055743 | 31-JAN-12 | Actual-1800A-RE | 943.32 | 0.00 | 0.00 | 943.32 |
| | 42054715 | 31-JAN-12 | Actual-1000A-RO | 2050.70 | 0.00 | 0.00 | 2050.70 |
| | 42055546 | 31-JAN-12 | Actua1-1210A-MA | 615.21 | 0.00 | 0.00 | 615.21 |
| | 42039566 | 31-JAN-12 | 5096A-SOFTHOTEL | 478.47 | 33.49 | 0.00 | 511.96 |
| | 42039759 | 31-JAN-12 | 5718A-HughesNet | 105.00 | 7.35 | 0.00 | 112.35 |

Page 9 of 10

ITEMIZED STATEMENT
-----------------

Customer No :   02554-87760-03-DAY
Address :       551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date:     15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Sub Total | | 4758.02 | 40.84 | 1.29 | 4800.15 |
| FEB-2012 | 10592362 | 08-FEB-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 0.00 | 160.00 |
| | 10592361 | 08-FEB-12 | GUEST SATISFACT | | 50.00 | 0.00 | 0.00 | 50.00 |
| | 21196144 | 22 FEB 12 | WYNREWARDS 5% | | 445.58 | 0.00 | 0.00 | 445.58 |

Page 12 of 12

| | | | | | | |
|---|---|---|---|---|---|---|
| 42085083 | 29-FEB-12 | Accrual-1800A-R | * | 1534.31 | 0.00 | 0.00 | 1534.31 |
| 42086960 | 29-FEB-12 | Accrual-1000A-R | * | 3335.45 | 0.00 | 0.00 | 3335.45 |
| 42084679 | 29-FEB-12 | Accrual-1210A-M | * | 1000.64 | 0.00 | 0.00 | 1000.64 |
| 42068430 | 29-FEB-12 | 5718A-HughesNet | | 105.00 | 7.35 | 0.00 | 112.35 |
| 42068625 | 29-FEB-12 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 0.00 | 511.96 |
| | | Sub Total | | 7109.45 | 40.84 | 0.00 | 7150.29 |
| MAR-2012 30673231 | 15-MAR-12 | GLOBAL CONFEREN | | 100.00 | 0.00 | 0.00 | 100.00 |
| | | Sub Total | | 100.00 | 0.00 | 0.00 | 100.00 |
| | | Grand Total | | 120603.33 | 645.00 | 20971.05 | 142219.38 |

Requested By: Jerilyn Marino

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 10 of 10

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 15 Mar 2012          **Tracking Number:**          1Z22445X1393250263

### 1  Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Anjani, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Amrat Anand | Jerilyn Marino | Jerilyn Marino |
| Days Inn | 22 Sylvan Way | 22 Sylvan Way |
| 2739 North Florida Avenue | Parsippany NJ 07054 | Parsippany NJ 07054 |
| TAMPA FL 336021521 | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |
| Telephone:(813) 826-3612 | | |

### 2  Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

### 3  UPS Shipping Service and Shipping Options

| | |
|---|---|
| Service: | UPS Next Day Air Saver |
| Guaranteed By: | 3:00 PM Friday, Mar 16, 2012 |
| Shipping Fees Subtotal: | 28.70 USD |
|    Transportation | 25.40 USD |
|    Fuel Surcharge | 3.30 USD |

### 4  Payment Information

| Bill Shipping Charges to: | Shipper's Account 22445X |
|---|---|

**A discount has been applied to the Daily rates for this shipment**

| Total Charged: | 28.70 USD |
|---|---|
| Negotiated Total: | 6.30 USD |

**Note:** Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

 **Shipment Receipt**

**Transaction Date:** 15 Mar 2012      **Tracking Number:**    1Z22445X1393574879

**1 Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Commercial Capital Corporation<br>Commercial Capital Corporation<br>25 West 43rd Street<br>Suite 900<br>NEW YORK NY 100367414 | Wyndham Hotel Group - 22 Sylvan<br>Jerilyn Marino<br>22 Sylvan Way<br>Parsippany NJ 07054<br>Telephone:(973) 753-7253 | Wyndham Hotel Group - 22 Sylvan<br>Jerilyn Marino<br>22 Sylvan Way<br>Parsippany NJ 07054<br>Telephone:(973) 753-7253 |

**2 Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | |
| | | | | Reference # 1 - 006-1696 |

**3 UPS Shipping Service and Shipping Options**

| | |
|---|---|
| Service: | UPS Next Day Air Saver |
| Guaranteed By: | 3:00 PM Friday, Mar 16, 2012 |
| Shipping Fees Subtotal: | **18.14 USD** |
|    Transportation | 16.05 USD |
|    Fuel Surcharge | 2.09 USD |

**4 Payment Information**

Bill Shipping Charges to:      Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| Total Charged: | |
|---|---|
| Negotiated Total: | 18.14 USD |
| | 6.30 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT G



## WYNDHAM
### HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ☐☐fax (800) 880-9445
www.wyndhamworldwide.com

March 28, 2012

**VIA 2 DAY DELIVERY METHOD**

Mr. Amrat M. Anand
Anjani, Inc.
2739 North Florida Avenue
Tampa, FL 33602

RE:    NOTICE OF TERMINATION of License Agreement, dated April 20, 1999, (the "Agreement")
between Anjani, Inc. ("you" or "your") and Days Inns Worldwide, Inc. ("we", "our" or "us")
for the Days® lodging facility located at Wildwood, FL #2554-87760-03 (the "Facility")

Dear Mr. Annand:

We write to give you formal notice of the termination of the License granted under the Agreement to operate
the Facility as part of the Days System (the "Notice"). This termination is a result of your failure to cure your
default under the Agreement, due to your failure to meet your financial obligations. The termination of your
Agreement is effective as of the date of this Notice (the "Termination Date").

Because your License will terminate, you must now perform your post-termination obligations such as
removal of all items that display or refer to the Days Inn brand at the Facility. The de-identification
procedures are specified in the attachment to this letter. These de-identification procedures must be
completed within 10 days after the Termination Date.

You must also immediately pay us the full amount of all Recurring Fees and other charges due under the
Agreement through the date you complete the de-identification process. We estimate that, as of March 24,
2012 you owe us $144,045.64 in Recurring Fees. This amount is described in more detail in the attached
itemized statement. Additionally, you must pay us Liquidated Damages of $260,000.00 as specified in the
Agreement. You must also pay Damages of $2,628.60 for early termination of the Addendum to the
Agreement for Satellite Connectivity Services (the "Addendum"), plus any additional fees and charges as
per Schedule 3 of the Addendum. The Addendum will also terminate on the Termination Date.



      

      

Mr. Amrat M. Anand
March 28, 2012
Page Two

Please know that, because your license will terminate, you will also lose your right to continue to use the seamless interface version of your property management system. You must now make your own arrangements with the software vendor for a new license. If the Facility has WynGuest system installed, please be advised that due to the termination you will have limited functionality from the system. Should you wish to continue using an independent version of the software and are interested in a minimum continuation agreement of 24 months, please contact Innlink Central Reservation Systems at 800-525-4658, an authorized reseller of the WynGuest product. If your property is planning to migrate to another property management system in less than 24 months, please contact your provider to expedite the installation. If you would like to inquire about the data maintained in the system, please contact Scott Robertson at 506-631-2104 to obtain reporting of that data.

If within the 10 day period described above, you do not timely remove the exterior signage which bears the Days Inn name and marks, we may exercise our rights under the Agreement and send an independent contractor to the Facility to remove all such signage at and around the Facility. The cost of sign removal will be added to your final invoice from us. If you object to the removal of the signage by our independent contractor, you must notify us within 10 days of the date of this letter.

If you do not timely complete each of these post-termination obligations, we will refer this matter to our legal department to ensure that we recover from you all amounts owed and that all of your post-termination obligations to us are performed.

This Notice does not modify, replace or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. Please consider this letter to be a notice and demand for payment under any Guaranty of the Agreement, directed to all of your Guarantors.

If you have any questions regarding your obligations under this letter, Larry Geer, Senior Director of Settlements at (973) 753-7131.

Sincerely,

Valerie Capers Workman
Vice President
Compliance & Government Relations

Enclosures

cc: Commercial Capital Corporation (Lender) ~ 2739 North Florida Avenue, Tampa FL 33602
    Jitendra Patel (Guarantor)
    Narendra Bhatt (Guarantor)
    Clyde Guinn
    Larry Geer

ITEMIZED STATEMENT
------------------

```
As of Date (DD-MMM-YYYY): 24-MAR-2012
Customer No            : 02354-B7760-03-DAY
Category Set           :
Category Group         :
Group No               :
Bankruptcy             : No Bankruptcy Sites
Disputed               : No
Finance Charges Included: Yes
```

Page 1 of 11

ITEMIZED STATEMENT

Customer No : 02554-B7760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| DEC-2009 | 41241412 | 31-DEC-09 | Actual-12100A-MA | | 433.68 | 0.00 | 90.50 | 524.18 |
| | 41242364 | 31-DEC-09 | Actual-1800A-RE | | 965.37 | 0.00 | 259.26 | 1224.63 |
| | | | | Sub Total | 1399.05 | 0.00 | 349.76 | 1748.81 |
| JAN-2010 | 21124549 | 22-JAN-10 | WYNREWARDS 5% | | 390.50 | 0.00 | 69.52 | 260.02 |
| | 41254715 | 31-JAN-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 99.82 | 373.41 |
| | 41255848 | 31-JAN-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 62.46 | 233.66 |
| | 41272349 | 31-JAN-10 | Actual-1000A-RO | | 2516.98 | 0.00 | 918.62 | 3435.60 |
| | 41273110 | 31-JAN-10 | Actual-1800A-RE | | 1157.81 | 0.00 | 422.68 | 1580.49 |
| | 41272654 | 31-JAN-10 | Actual-1210A-MA | | 755.10 | 0.00 | 275.59 | 1030.69 |
| | 41255195 | 31-JAN-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 39.75 | 148.68 |
| | | | | Sub Total | 5137.88 | 36.23 | 1888.44 | 7062.55 |
| FEB-2010 | 21128380 | 22-FEB-10 | WYNREWARDS 5% | | 286.08 | 0.00 | 99.93 | 386.01 |
| | 41313691 | 28-FEB-10 | Actual-1800A-RE | | 1303.16 | 0.00 | 455.49 | 1758.65 |
| | 41283217 | 28-FEB-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 95.59 | 369.18 |
| | 41312838 | 28-FEB-10 | Actual-1000A-RO | | 2832.95 | 0.00 | 990.08 | 3823.03 |
| | 41282442 | 28-FEB-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 59.80 | 231.00 |
| | 41281991 | 28-FEB-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 38.07 | 147.00 |
| | 41310651 | 28-FEB-10 | Actual-1210A-MA | | 849.89 | 0.00 | 297.00 | 1146.89 |
| | | | | Sub Total | 5789.57 | 36.23 | 2035.96 | 7861.76 |
| MAR-2010 | TA0112381 | 03-MAR-10 | T/A COMMISSIONS | | 11.55 | 0.00 | 4.03 | 15.58 |
| | 1112381 | 03-MAR-10 | GDS & INTERNET | | 5.43 | 0.00 | 3.65 | 9.08 |
| | 10449316 | 10-MAR-10 | GUEST SATISFACT | | 70.80 | 0.00 | 24.77 | 95.57 |
| | 10449314 | 10-MAR-10 | GUEST SRVCS TRA | | 100.00 | 0.00 | 34.95 | 134.95 |
| | 30414571 | 12-MAR-10 | '10 GLOBAL CONF | | 999.00 | 0.00 | 334.65 | 1333.65 |
| | 21130718 | 22-MAR-10 | WYNREWARDS 5% | | 296.09 | 0.00 | 99.04 | 395.13 |
| | 1118870 | 29-MAR-10 | GDS & INTERNET | | 14.05 | 0.00 | 4.72 | 18.77 |
| | 41331168 | 31-MAR-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 91.48 | 365.07 |

Page 2 of 11

ITEMIZED STATEMENT

Customer No :  02554-87760-03-DAY
Address :      551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:    24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41328594 | 31-MAR-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 57.24 | 228.44 |
| | 41329127 | 31-MAR-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 36.43 | 145.36 |
| | 41347479 | 31-MAR-10 | Actual-1800A-RE | | | 0.00 | 468.52 | 1869.08 |
| | 41348219 | 31-MAR-10 | Actual-1210A-MA | | 1400.56 | 0.00 | 305.55 | 1218.96 |
| | 41346213 | 31-MAR-10 | Actual-1000A-RO | | 913.41 | 0.00 | 1018.42 | 4063.12 |
| | | | | | 3044.70 | | | |
| | | | Sub Total | | 7373.08 | 36.23 | 2483.45 | 9892.76 |
| APR-2010 | 30422340 | 05-APR-10 | OCT 2009 NT AUD | | 75.78 | 0.00 | 25.32 | 101.10 |
| | 30422459 | 05-APR-10 | OCT 2009 NT AUD | | 99.71 | 0.00 | 33.45 | 133.16 |
| | 30426704 | 14-APR-10 | ONLINE LRNG LIB | | 50.00 | 0.00 | 16.79 | 66.79 |
| | 1125494 | 18-APR-10 | GDS & INTERNET | | 8.70 | 0.00 | 2.72 | 11.42 |
| | 21134678 | 22-APR-10 | WYNREWARDS 5% | | 176.24 | 0.00 | 56.19 | 232.43 |
| | 41366135 | 30-APR-10 | 5032A-MSI SOFTW | | 255.64 | 17.89 | 87.25 | 360.78 |
| | 41365374 | 30-APR-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 34.75 | 143.68 |
| | 41375959 | 30-APR-10 | Actual-1210A-MA | | 842.97 | 0.00 | 268.92 | 1111.89 |
| | 41376109 | 30-APR-10 | Actual-1800A-RE | | 1292.56 | 11.20 | 412.28 | 1704.84 |
| | 41364414 | 30-APR-10 | 5066A-DIRECWAY | | 160.00 | 0.00 | 54.58 | 225.78 |
| | 41376684 | 30-APR 10 | Actual-1000A-RO | | 2809.91 | | 896.32 | 3706.23 |
| | | | Sub Total | | 5873.31 | 36.22 | 1888.57 | 7798.10 |
| MAY-2010 | 21137071 | 22-MAY-10 | WYNREWARDS 5% | | 235.36 | 0.00 | 71.57 | 306.93 |
| | 1132640 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 1.38 | 5.73 |
| | 30441876 | 28-MAY-10 | NOV 2009 NT AUD | | 280.90 | 0.00 | 85.32 | 366.22 |
| | 30442325 | 28-MAY-10 | NOV 2009 NT AUD | | 213.49 | 0.00 | 64.90 | 278.39 |
| | 41406692 | 31-MAY-10 | Actual-1800A-RE | | 1338.84 | 0.00 | 372.95 | 1711.79 |
| | 41409155 | 31-MAY-10 | Actual-1210A-MA | | 873.16 | 0.00 | 243.22 | 1116.38 |
| | 41407275 | 31-MAY-10 | Actual-1000A-RO | | 2910.53 | 0.00 | 810.85 | 3721.38 |
| | 41391212 | 31-MAY-10 | 5052A-HARDWARE | | 101.80 | 7.13 | 33.11 | 142.04 |
| | 41391355 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 52.02 | 223.22 |
| | 41389187 | 31-MAY-10 | 5032A-MSI SOFTW | | 255.69 | 17.90 | 83.14 | 356.73 |

ITEMIZED STATEMENT

Customer No : 02554-B7760-03-DAY
Address : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|-----------------|------------|----------------|-------|
| JUN-2010 | 30448350 | 04-JUN-10 | CYA Credit | | | | |
| | 1139263 | 20-JUN-10 | GDS & INTERNET | (132.19) | 0.00 | 0.00 | (132.19) |
| | 21139748 | 22-JUN-10 | WYNREWARDS 5% | 4.35 | 0.00 | 1.31 | 5.66 |
| | 41432221 | 30-JUN-10 | 5066A-DIRECWAY | 135.59 | 0.00 | 39.08 | 174.67 |
| | 41451283 | 30-JUN-10 | Actual-1800A-RE | 160.00 | 11.20 | 49.37 | 220.57 |
| | 41432213 | 30-JUN-10 | 5032A-MSI SOFTW | 1002.68 | 0.00 | 299.26 | 1291.94 |
| | 41431474 | 30-JUN-10 | 5052A-HARDWARE | 255.69 | 17.90 | 78.90 | 352.49 |
| | 41450999 | 30-JUN-10 | Actual-1210A-MA | 101.80 | 7.13 | 31.42 | 140.35 |
| | 41449200 | 30-JUN-10 | Actual-1000A-RO | 653.92 | 0.00 | 188.70 | 842.62 |
| | | | | 2179.74 | 0.00 | 628.93 | 2808.67 |
| | | | Sub Total | 6374.12 | 36.23 | 1818.46 | 8228.81 |
| JUL-2010 | 7PA0145860 | 18-JUL-10 | T/A COMMISSIONS | 15.66 | 0.00 | 4.23 | 19.89 |
| | TR0145860 | 18-JUL-10 | TNC / CONSORTIA | 5.48 | 0.00 | 1.44 | 6.92 |
| | 1145860 | 18-JUL-10 | GDS & INTERNET | 20.40 | 0.00 | 5.64 | 26.04 |
| | TM0145860 | 18-JUL-10 | MEMBER BENEFIT | 14.39 | 0.00 | 3.92 | 18.31 |
| | 21141440 | 22-JUL-10 | WYNREWARDS 5% | 28.94 | 0.00 | 7.90 | 36.84 |
| | 41474267 | 31-JUL-10 | Actual-1210A-MA | 572.92 | 0.00 | 156.39 | 729.31 |
| | 41473337 | 31-JUL-10 | Actual-1000A-RO | 1909.73 | 0.00 | 521.37 | 2431.10 |
| | 41463002 | 31-JUL-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 46.71 | 217.91 |
| | 41474573 | 31-JUL-10 | Actual-1800A-RE | 878.48 | 0.00 | 239.88 | 1118.36 |
| | | | Sub Total | 3606.00 | 11.20 | 987.48 | 4604.68 |
| AUG-2010 | 10488588 | 19-AUG-10 | GUEST SRVCS TRA | 160.00 | 0.00 | 41.28 | 201.28 |
| | 10488587 | 19-AUG-10 | GUEST SATISFACT | 40.00 | 0.00 | 10.32 | 50.32 |
| | 1152448 | 22-AUG-10 | GDS & INTERNET | 4.60 | 0.00 | 1.18 | 5.78 |
| | 41516851 | 31-AUG-10 | Actual-1800A-RE | 709.03 | 0.00 | 182.96 | 891.99 |
| | 41514918 | 31-AUG-10 | Actual-1000A-RO | 1541.38 | 0.00 | 397.66 | 1939.04 |
| | 41489595 | 31-AUG-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 44.15 | 215.35 |

Page 4 of 11

ITEMIZED STATEMENT
-----------------

Customer No : 02554-B7760-03-DAY
Address : 551 EAST SR44, WILDWOOD, FL, 34785-8404, US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41516023 | 31-AUG-10 | Actual-1210A-MA | | 462.41 | 0.00 | 119.34 | 581.75 |
| | | | Sub Total | | 3077.42 | 11.20 | 796.89 | 3885.51 |
| SEP-2010 | 10494043 | 02-SEP-10 | GUEST SATISFACT | | 25.00 | 0.00 | 6.50 | 31.50 |
| | 10494001 | 02-SEP-10 | GUEST SRVCS TRA | | 160.00 | 0.00 | 41.28 | 201.28 |
| | 21147701 | 22-SEP-10 | WYNREWARDS 5% | | 7.25 | 0.00 | 1.75 | 9.00 |
| | 41531259 | 30-SEP-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 41.49 | 212.69 |
| | 41548989 | 30-SEP-10 | Actual-1210A-MA | | 446.01 | 0.00 | 108.13 | 554.14 |
| | 41549613 | 30-SEP-10 | Actual-1800A-RE | | 683.88 | 0.00 | 165.85 | 849.73 |
| | 41547191 | 30-SEP-10 | Actual-1000A-RO | | 1486.70 | 0.00 | 360.49 | 1847.19 |
| | | | Sub Total | | 2968.84 | 11.20 | 725.49 | 3705.53 |
| OCT-2010 | 41560809 | 31-OCT-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 38.93 | 210.13 |
| | 41572201 | 31-OCT-10 | Actual-1210A-MA | | 544.40 | 0.00 | 128.87 | 673.27 |
| | 41572254 | 31-OCT-10 | Actual-1800A-RE | | 834.75 | 0.00 | 197.57 | 1032.32 |
| | 41570635 | 31-OCT-10 | Actual-1000A-RO | | 1814.67 | 0.00 | 429.52 | 2244.19 |
| | | | Sub Total | | 3353.82 | 11.20 | 794.89 | 4159.91 |
| NOV-2010 | 21154647 | 22-NOV-10 | WYNREWARDS 5% | | 11.50 | 0.00 | 2.44 | 13.94 |
| | 41612909 | 30-NOV-10 | Actual-1210A-MA | | 616.53 | 0.00 | 129.58 | 746.11 |
| | 41587823 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 11.20 | 36.28 | 207.48 |
| | 41613776 | 30-NOV-10 | Actual-1800A-RE | | 945.34 | 0.00 | 198.61 | 1143.95 |
| | 41613975 | 30-NOV-10 | Actual-1000A-RO | | 2055.09 | 0.00 | 431.79 | 2486.88 |
| | | | Sub Total | | 3788.46 | 11.20 | 798.70 | 4598.36 |
| DEC-2010 | 21156381 | 22-DEC-10 | WYNREWARDS 5% | | 2.25 | 0.00 | 0.39 | 2.64 |
| | 41639071 | 31-DEC-10 | Actual-1000A-RO | | 2018.18 | 0.00 | 399.43 | 2417.61 |

Page 5 of 11

Report Date : 24-MAR-12

ITEMIZED STATEMENT

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 41624650 | 31-DEC-10 | 5066A-DIRECWAY | 160.00 | 11.20 | 33.62 | 204.82 |
| | 41640626 | 31-DEC-10 | Actual-1800A-RE | 928.36 | 0.00 | 183.77 | 1112.13 |
| | 41640215 | 31-DEC-10 | Actual-1210A-MA | 605.45 | 0.00 | 119.80 | 725.25 |
| | | | Sub Total | 3714.24 | 11.20 | 737.01 | 4462.45 |
| JAN-2011 | 21160292 | 22-JAN-11 | WYNREWARDS 5% | 3.00 | 0.00 | 0.62 | 3.62 |
| | 41660151 | 31-JAN-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 32.42 | 203.62 |
| | 41677351 | 31-JAN-11 | Actual-1000A-RO | 2107.57 | 0.00 | 402.71 | 2510.28 |
| | 41674454 | 31-JAN-11 | Actual-1800A-RE | 969.48 | 0.00 | 185.26 | 1154.74 |
| | 41675518 | 31-JAN-11 | Actual-1210A-MA | 632.27 | 0.00 | 120.80 | 753.07 |
| | | | Sub Total | 3872.32 | 11.20 | 741.81 | 4625.33 |
| FEB-2011 | 30541558 | 14-FEB-11 | SUMMIT 2011 FEE | 599.00 | 0.00 | 109.32 | 708.32 |
| | 41706428 | 28-FEB-11 | Actual-1000A-RO | 2832.67 | 0.00 | 497.15 | 3329.82 |
| | 41693482 | 28-FEB-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 30.03 | 201.23 |
| | 41705791 | 28-FEB-11 | Actual-1800A-RE | 1303.03 | 0.00 | 228.71 | 1531.74 |
| | 41704713 | 28-FEB-11 | Actual-1210A-MA | 849.80 | 0.00 | 149.14 | 998.94 |
| | | | Sub Total | 5744.50 | 11.20 | 1014.35 | 6770.05 |
| MAR-2011 | 10530399 | 24-MAR-11 | GUEST SATISFACT | 65.00 | 0.00 | 10.66 | 75.66 |
| | 10530397 | 24-MAR-11 | GUEST SRVCS TRA | 160.00 | 0.00 | 26.16 | 186.16 |
| | 41726403 | 31-MAR-11 | 5066A-DIRECWAY | 160.00 | 11.20 | 27.37 | 198.57 |
| | 41740222 | 31-MAR-11 | Actual-1210A-MA | 975.26 | 0.00 | 156.06 | 1131.32 |
| | 41740072 | 31-MAR-11 | Actual-1000A-RO | 3250.86 | 0.00 | 520.14 | 3771.00 |
| | 41738460 | 31-MAR-11 | Actual-1800A-RE | 1495.40 | 0.00 | 239.27 | 1734.67 |
| | | | Sub Total | 6106.52 | 11.20 | 979.66 | 7097.38 |

Page 6 of 11

ITEMIZED STATEMENT

Customer No : 02554-B7760-03-DAY
Address :    551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:  24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| APR-2011 | 21167345 | 22-APR-11 | WYNREWARDS 5% | | 17.98 | 0.00 | 2.69 | 20.67 |
| | 10538095 | 28-APR-11 | GUEST SATISFACT | | 90.00 | 0.00 | 13.17 | 103.17 |
| | 10538093 | 28-APR-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 23.36 | 183.36 |
| | 41770231 | 30-APR-11 | Actual-1210A-MA | | 873.16 | 0.00 | 126.60 | 999.76 |
| | 41772062 | 30-APR-11 | Actual-1000A-RO | | 2910.53 | 0.00 | 422.01 | 3332.54 |
| | 41755878 | 30-APR-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 14.31 | 112.71 |
| | 41756555 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 24.81 | 196.01 |
| | 41770555 | 30-APR-11 | Actual-1800A-RE | | 1338.84 | 0.00 | 194.11 | 1532.95 |
| | | | Sub Total | | 5648.91 | 11.20 | 821.06 | 6481.17 |
| MAY-2011 | 21170554 | 22-MAY-11 | WYNREWARDS 5% | | 2.50 | 0.00 | 0.35 | 2.85 |
| | 41787154 | 31-MAY-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 22.15 | 193.35 |
| | 41785248 | 31-MAY-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 12.78 | 111.18 |
| | 41801659 | 31-MAY-11 | Actual-1210A-MA | | 638.55 | 0.00 | 82.71 | 721.26 |
| | 41802888 | 31-MAY-11 | Actual-1000A-RO | | 2128.50 | 0.00 | 275.63 | 2404.13 |
| | 41802630 | 31-MAY-11 | Actual-1800A-RE | | 979.11 | 0.00 | 126.82 | 1105.93 |
| | | | Sub Total | | 4007.06 | 11.20 | 520.44 | 4538.70 |
| JUN-2011 | 21173882 | 22-JUN-11 | WYNREWARDS 5% | | 16.45 | 0.00 | 1.94 | 18.39 |
| | 41833099 | 30-JUN-11 | Actual-1800A-RE | | 1068.24 | 0.00 | 122.32 | 1190.56 |
| | 41830799 | 30-JUN-11 | Actual-1210A-MA | | 696.68 | 0.00 | 79.77 | 776.45 |
| | 41815247 | 30-JUN-11 | 5066A-DIRECWAY | | 160.00 | 11.20 | 19.59 | 190.79 |
| | 41813634 | 30-JUN-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 11.30 | 109.70 |
| | 41831204 | 30-JUN-11 | Actual-1000A-RO | | 2322.27 | 0.00 | 265.91 | 2588.18 |
| | | | Sub Total | | 4362.04 | 11.20 | 500.83 | 4874.07 |
| JUL-2011 | 30603633 | 18-JUL-11 | PM SYSTEM TRAIN | * | (1175.00) | 0.00 | 0.00 | (1175.00) |
| | 41866499 | 31-JUL-11 | Accrual-1210A-M | | 585.75 | 0.00 | 58.00 | 643.75 |
| | 41849275 | 31-JUL-11 | 5625A-PRM SUPPO | * | 98.40 | 0.00 | 9.77 | 108.17 |
| | 41867354 | 31-JUL-11 | Accrual-1000A-R | | 1952.50 | 0.00 | 193.29 | 2145.79 |

Page 7 of 11

```
                                    ITEMIZED STATEMENT
                                    ------------------
```

Customer No : 02554-87760-03-DAY
Address    : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
|          | 30606371  | 31-JUL-11    | HughesNet VPN |       | 105.00  | 7.35 | 11.13 | 123.48 |
|          | 41865436  | 31-JUL-11    | Accrual-1800A-R | * | 898.15  | 0.00 | 88.91 | 987.06 |
|          |           |              | Sub Total   |         | 2464.80 | 7.35 | 361.10 | 2833.25 |
| AUG-2011 | 21180343  | 22-AUG-11    | WYNREWARDS 5% |       | 179.13  | 0.00 | 15.78 | 194.91 |
|          | 41896488  | 31-AUG-11    | Actual-1000A-RO |     | 1551.45 | 0.00 | 139.52 | 1790.97 |
|          | 30612632  | 31-AUG-11    | HughesNet VPN |       | 105.00  | 7.35 | 9.38 | 121.73 |
|          | 41883658  | 31-AUG-11    | 5096A-SOFTHOTEL |     | 478.47  | 33.49 | 42.76 | 554.72 |
|          | 41897315  | 31-AUG-11    | Actual-1800A-RE |     | 759.67  | 0.00 | 64.18 | 823.85 |
|          | 41898953  | 31-AUG-11    | Actual-1210A-MA |     | 495.43  | 0.00 | 41.86 | 537.29 |
|          |           |              | Sub Total   |         | 3669.15 | 40.84 | 313.48 | 4023.47 |
| SEP-2011 | 30619139  | 15-SEP-11    | ONLINE LRNG LIB |     | 50.00   | 0.00 | 3.82 | 53.82 |
|          | 21182951  | 22-SEP-11    | WYNREWARDS 5% |       | 129.62  | 0.00 | 9.40 | 139.02 |
|          | 30627449  | 28-SEP-11    | GLOBAL CONFEREN |     | 999.00  | 0.00 | 0.00 | 999.00 |
|          | 41927063  | 30-SEP-11    | Actual-1800A-RE |     | 676.34  | 0.00 | 46.56 | 722.90 |
|          | 30633329  | 30-SEP-11    | HughesNet VPN |       | 105.00  | 7.35 | 7.70 | 120.05 |
|          | 41925396  | 30-SEP-11    | Actual-1000A-RO |     | 1470.30 | 0.00 | 101.21 | 1571.51 |
|          | 41914826  | 30-SEP-11    | 5096A-SOFTHOTEL |     | 478.47  | 33.49 | 35.08 | 547.04 |
|          | 41925928  | 30-SEP-11    | Actual-1210A-MA |     | 441.09  | 0.00 | 30.37 | 471.46 |
|          |           |              | Sub Total   |         | 4349.82 | 40.84 | 234.14 | 4624.80 |
| OCT-2011 | 21185398  | 22-OCT-11    | WYNREWARDS 5% |       | 181.05  | 0.00 | 10.42 | 191.47 |
|          | 41936501  | 31-OCT-11    | 5718A-HughesNet |     | 105.00  | 7.35 | 5.95 | 118.30 |
|          | 41938243  | 31-OCT-11    | 5096A-SOFTHOTEL |     | 478.47  | 33.49 | 27.14 | 539.10 |
|          | 41962526  | 31-OCT-11    | Actual-1000A-RO |     | 1575.20 | 0.00 | 83.47 | 1658.67 |
|          | 41961165  | 31-OCT-11    | Actual-1210A-MA |     | 472.56  | 0.00 | 25.03 | 497.59 |
|          | 41964140  | 31-OCT-11    | Actual-1800A-RE |     | 724.59  | 0.00 | 38.40 | 762.99 |

ITEMIZED STATEMENT

Customer No : 02554-87760-03-DAY
Address : 551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date: 24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| NOV-2011 | 21188723 | 22-NOV-11 | WYNREWARDS 5% | | 346.24 | 0.00 | 14.54 | 360.78 |
| | 41987710 | 30-NOV-11 | Actual-1800A-RE | | 771.07 | 0.00 | 29.30 | 800.37 |
| | 41988469 | 30-NOV-11 | Actual-1000A-RO | | 1676.25 | 0.00 | 63.70 | 1739.95 |
| | 41985712 | 30-NOV-11 | Actual-1210A-MA | | 502.87 | 0.00 | 19.10 | 521.97 |
| | 41970293 | 30-NOV-11 | 5718A-HughesNet | | 105.00 | 7.35 | 4.27 | 116.62 |
| | 41970694 | 30-NOV-11 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 19.46 | 531.42 |
| | | | Sub Total | | 3536.87 | 40.84 | 190.41 | 3768.12 |
| DEC-2011 | 10584683 | 08-DEC-11 | GUEST SRVCS TRA | | 160.00 | 0.00 | 5.44 | 165.44 |
| | 10584682 | 08-DEC-11 | GUEST SATISFACT | | 45.00 | 0.00 | 1.53 | 46.53 |
| | 21191524 | 22-DEC-11 | WYNREWARDS 5% | | 377.04 | 0.00 | 10.18 | 387.22 |
| | 42027714 | 31-DEC-11 | Actual-1800A-RE | | 786.99 | 0.00 | 17.71 | 804.70 |
| | 42026141 | 31-DEC-11 | Actual-1000A-RO | | 1710.85 | 0.00 | 38.50 | 1749.35 |
| | 42009697 | 31-DEC-11 | 5718A-HughesNet | | 105.00 | 7.35 | 2.53 | 114.88 |
| | 42010055 | 31-DEC-11 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 11.52 | 523.48 |
| | 42027270 | 31-DEC-11 | Actual-1210A-MA | | 513.25 | 0.00 | 11.55 | 524.80 |
| | | | Sub Total | | 3879.90 | 40.84 | 150.37 | 4071.11 |
| JAN-2012 | 10587699 | 04-JAN-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 3.28 | 163.28 |
| | 10587698 | 04-JAN-12 | GUEST SATISFACT | | 54.67 | 0.00 | 1.12 | 55.79 |
| | 21193734 | 22-JAN-12 | WYNREWARDS 5% | | 350.65 | 0.00 | 4.03 | 354.68 |
| | 42039566 | 31-JAN-12 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 3.58 | 515.54 |
| | 42039759 | 31-JAN-12 | 5718A-HughesNet | | 105.00 | 7.35 | 0.79 | 113.14 |
| | 42055546 | 31-JAN-12 | Actual-1210A-MA | | 615.21 | 0.00 | 4.31 | 619.52 |
| | 42055743 | 31-JAN-12 | Actual-1800A-RE | | 943.32 | 0.00 | 6.60 | 949.92 |
| | 42054715 | 31-JAN-12 | Actual-1000A-RO | | 2056.70 | 0.00 | 14.35 | 2065.05 |
| | | | Sub Total | | 4176.60 | 40.84 | 98.96 | 4316.40 |

ITEMIZED STATEMENT

```
Customer No :  02554-87760-03-DAY
Address :      551 EAST SR44,WILDWOOD,FL,34785-8404,US
As of Date:    24-MAR-2012
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| FEB-2012 | 10592362 | 08-FEB-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 0.48 | 160.48 |
| | 10592361 | 08-FEB-12 | GUEST SATISFACT | | 50.00 | 0.00 | 0.15 | 50.15 |
| | 21196144 | 22-FEB-12 | WYNREWARDS 5% | | 445.58 | 0.00 | 0.00 | 445.58 |
| | 42086960 | 29-FEB-12 | Accrual-1000A-R | * | 3335.45 | 0.00 | 0.00 | 3335.45 |
| | 42068430 | 29-FEB-12 | 5718A-HughesNet | | 105.00 | 7.35 | 0.00 | 112.35 |
| | 42060625 | 29-FEB-12 | 5096A-SOFTHOTEL | | 478.47 | 33.49 | 0.00 | 511.96 |
| | 42084679 | 29-FEB-12 | Accrual-1210A-M | * | 1000.64 | 0.00 | 0.00 | 1000.64 |
| | 42085083 | 29-FEB-12 | Accrual-1800A-R | * | 1534.31 | 0.00 | 0.00 | 1534.31 |
| | | | Sub Total | | 7109.45 | 40.84 | 0.63 | 7150.92 |
| MAR-2012 | 10597468 | 15-MAR-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 0.00 | 160.00 |
| | 10597470 | 15-MAR-12 | GUEST SATISFACT | | 59.94 | 0.00 | 0.00 | 59.94 |
| | 30673231 | 15-MAR-12 | GLOBAL CONFEREN | | 100.00 | 0.00 | 0.00 | 100.00 |
| | | | Sub Total | | 319.94 | 0.00 | 0.00 | 319.94 |
| | | | Grand Total | | 120823.27 | 645.00 | 22577.37 | 144045.64 |

(Sub Total at top: Billing 4758.02, Tax 40.84, FinanceCharges 38.06, Total 4836.92)

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

Requested By: Brenda Melendez

Page 10 of 11

ITEMIZED STATEMENT
--------------------------

******* END OF REPORT *******

## DE-IDENTIFICATION PROCEDURES

You must complete each of the following within 10 days after the Termination Date:

1.  Remove, replace or cover with an opaque cover the primary Facility signage.

2.  Remove all interior signage that contains Days Marks.

3.  Change advertising billboards to remove Days Marks.

4.  Stop answering Facility telephone as Days guest lodging facility.

5.  Remove Days name and Marks from any domain name, advertising and brochures.

6.  Return to us all confidential operations and training manuals.

7.  Remove the Days name and Marks from the following items:

    | | |
    |---|---|
    | Stationery, pads and pens | Soap/shampoo |
    | Directories and brochures | Key tags |
    | Business cards | Credit card imprinter |
    | Folios and registration cards | Laundry bags |
    | Do-not-disturb cards | Name tags/uniforms |
    | Comment cards | Ice buckets/trays |
    | Telephone plates | Ashtrays/matches |
    | Telephone dialing instructions | Plaques |
    | TV channel ID plates | Guest checks/receipts |
    | Rate/law cards | Menus |
    | Door signage | |

8.  Paint over or remove any distinctive Days trade dress, paint schemes or architectural features.

9.  It is prohibited to re-name the Facility with a confusingly similar name or color scheme as a Days facility.

10. Our quality assurance inspectors will visit the Facility at any time after 10 days after the Termination Date to verify that you have performed these de-identification obligations.

UPS CampusShip: Shipment Receipt

Page 1 of 1

## Shipment Receipt

| | |
|---|---|
| Transaction Date: | 28 Dec 2011 |
| Tracking Number: | 1Z22445X0298810375 |

### 1  Address Information

**Ship To:**
Anjani, Inc.
Amrat M. Anand
2739 North Florida Avenue
TAMPA FL 336021521

**Return Address:**
Wyndham Hotel Group - 22 Sylvan
Brenda Melendez
22 Sylvan Way
Parsippany NJ 07054
Telephone:9737538950

**Ship From:**
Wyndham Hotel Group - 22 Sylvan
Brenda Melendez
22 Sylvan Way
Parsippany NJ 07054
Telephone:9737538950

### 2  Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |

### 3  UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air
**Guaranteed By:**
End of Day Friday, 12/30/11

| | |
|---|---|
| Shipping Fees Subtotal: | 14.42 USD |
| Transportation | 12.65 USD |
| Fuel Surcharge | 1.77 USD |

### 4  Payment Information

**Bill Shipping Charges to:**          Shipper's Account 22445X

A discount has been applied to the Daily rates for this shipment

| | |
|---|---|
| Total Charged: | 14.42 USD |
| Negotiated Total: | 5.45 USD |

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

UPS CampusShip: Shipment Receipt

## Shipment Receipt

Transaction Date:                    28 Dec 2011
Tracking Number:                     1Z22445X0298156985

### 1  Address Information

Ship To:                        Ship From:
Commercial Capital Corporation   Wyndham Hotel Group - 22 Sylvan
2739 North Florida Avenue        Brenda Melendez
TAMPA FL 336021521               22 Sylvan Way
                                 Parsippany NJ 07054
Return Address:                  Telephone:9737538950
Wyndham Hotel Group - 22 Sylvan
Brenda Melendez
22 Sylvan Way
Parsippany NJ 07054
Telephone:9737538950

### 2  Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|--------|------------------------|----------------|-------------------|
| 1.  Letter | UPS Letter | | Reference # 1 - 006-1696 |

### 3  UPS Shipping Service and Shipping Options

Service:
UPS 2nd Day Air
Guaranteed By:
End of Day Friday, 12/30/11
Shipping Fees Subtotal:        14.42 USD
   Transportation              12.65 USD
   Fuel Surcharge              1.77 USD

### 4  Payment Information

Bill Shipping Charges to:              Shipper's Account 22445X

A discount has been applied to the Daily rates for this shipment

Total Charged:                                  14.42 USD
Negotiated Total:                               5.45 USD

Note: Your invoice may vary from the displayed reference rates

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.